CHALLENGE MACHINERY COMPANY v MATTISON MACHINE
WORKS

Docket No. 69470. Submitted May 1, 1984, at Grand Rapids.—Decided
October 2, 1984. Leave to appeal applied for.

Plaintiff, The Challenge Machinery Company, negotiated with the
J. Lee Hackett Company for the purchase of a surface grinder
manufactured by Mattison Machine Works. The price quotation
submitted by Hackett contained a provision that the proposal
was subject only to the terms contained therein and that no
additional or different terms contained in any purchase order,
acceptance or other form would be binding on Hackett. The
quotation incorporated a copy of Mattison's terms and condi-
tions of sale which contained a similar clause relating to
additional or inconsistent terms and limited Mattison's liability
to replacing or repairing parts, disclaiming all other warranties
and all liability for consequential damages. Challenge re-
sponded to the quotation by sending a purchase order to
Hackett which contained similar language, stating that no
different or additional terms proposed by the seller would
become part of the contract. The purchase order stated that the
seller warranted the machine to be free from all defects and,
further, that the seller would indemnify the plaintiff for all
damages arising out of or in any way connected with the
machine. The grinder was delivered and installed and was out
of commission for approximately six of the next nine months,
during which time personnel from Mattison and Hackett ad-
justed and repaired the machine until it performed to plaintiff's
satisfaction. Plaintiff thereafter brought an action against

REFERENCES FOR POINTS IN HEADNOTES

[1] 67 Am Jur 2d, Sales §§ 74, 75, 81-83, 90.

[2-4] 67 Am Jur 2d, Sales §§ 91-93.
What constitutes acceptance "expressly made conditional" covert-
ing it to rejection and counteroffer under UCC § 2-207(1). 22
ALR4th 939.

[3] 17 Am Jur 2d, Contracts §§ 62, 65.
67 Am Jur 2d, Sales § 64.

[4] 17 Am Jur 2d, Contracts § 267.

[5] 17 Am Jur 2d, Contracts §§ 375, 377, 441, 521.
74 Am Jur 2d, Torts §§ 23, 24.

Hackett and Mattison seeking damages resulting from the lost production time. Plaintiff alleged breach of warranties and breach of contract and negligent installation of the grinder. The Ottawa Circuit Court, Calvin L. Bosman, J., granted summary judgment to the defendants on the breach of warranty and breach of contract claims, holding that the limitation of damages provisions of the defendants' offer were effective and that, although plaintiff's purchase order contained conflicting terms, the provisions did not cancel each other out. The court denied summary judgment on the negligence claim, holding· that the limitation of damages provisions did not apply to damages resulting from defendants' negligence. Plaintiff appealed by leave granted from the grant of summary judgment and defendants cross-appealed from the denial of summary judgment on the negligence count. *Held:*

1. In order to determine which of the standardized forms used by the parties constituted the "offer" and which the "acceptance" it is necessary to go beyond the language of the parties and to examine the totality of the circumstances. In doing so, the trial court did not err in finding that the proposal by defendant Hackett constituted the offer.

2. The purchase order submitted by plaintiff constituted an· acceptance. The difference in terms between it and the offer does not render the acceptance inoperative where the purchase order did not expressly and clearly reveal that the plaintiff would not proceed unless assured of the defendants' assent to the additional or different terms.

3. The writings of the parties establish a contract.

4. The conflicting provisions of the forms cancelled each other out and did not become a part of the contract. The trial court erred in applying § 2-207 of the Uniform Commercial Code to find that the provisions did not cancel each other. That section is not applicable to the circumstances herein. Because neither provision became a part of the contract the provisions of the UCC will govern the dispute. The trial court thus erred in granting summary judmgent on the breach of warranty and breach of contract counts.

5. The trial court did not err in denying summary judgment on the negligence count. The negligent performance of an undertaking, even though grounded on a contractual relationship, may constitute an actionable tort as well as a breach of contract.

Affirmed in part, reversed in part, and remanded.

1. Sales — Offer and Acceptance — Totality of Circumstances.

The language employed by the parties to a sales transaction,

particularly where they have used standardized forms, is not always determinative of whether a particular party's form should be considered an "offer" or an "acceptance"; the court must look beyond the words employed and apply a test which examines the totality of the circumstances.

2. SALES — OFFER AND ACCEPTANCE — CONDITIONAL ACCEPTANCE.

An acceptance which contains terms that are additional to or different from those contained in the offer is not thereby rendered inoperative, precluding the formation of a contract, unless the acceptance is made conditional on the assent of the other party to the additional or different terms; in order for such a condition to be operative, the acceptance must clearly reveal that the offeree is unwilling to proceed unless assured of the offeror's assent to the additional or different terms (MCL 440.2207[1]; MSA 19.2207[1]).

3. SALES — OFFER AND ACCEPTANCE — ENFORCEMENT OF CONTRACT.

The parties to a contract which is the result of a written offer and acceptance using standardized forms may enforce their agreement despite discrepancies in the exchanged forms if enforcement can be granted without requiring either party to be bound to a material term to which he has not agreed.

4. SALES — OFFER AND ACCEPTANCE — CONFLICTING PROVISIONS.

Conflicting provisions contained in an offer and an acceptance cancelled each other out and neither became a part of the contract where each party's provision attempted to forestall the inclusion by the other party of any additional, different, or inconsistent terms into the contract (MCL 440.2207; MSA 19.2207).

5. NEGLIGENCE — CONTRACTS — TORTS — BREACH OF CONTRACT.

The negligent performance of an undertaking, even though grounded upon a contractual relationship, may constitute an actionable tort as well as a breach of contract.

*Varnum, Riddering, Schmidt & Howlett* (by *Dennis C. Kolenda)*, for plaintiff.

*Warner, Norcross & Judd* (by *Roger M. Clark* and *Patrick E. Mears)*, for Mattison Machine Works.

*Nelson & Kreuger, P.C.* (by *Steven L. Kreuger)*, for J. Lee Hackett Company.

Before: Beasley, P.J., and Allen and M. B. Breighner,* JJ.

Per Curiam. Plaintiff, The Challenge Machinery Company, appeals by leave granted from the December 30, 1982, order which granted defendants' motions for summary judgment and dismissed counts I-IV of Challenge's complaint. Defendant Mattison Machine Works cross-appeals from that portion of the order which denied its motion for summary judgment on count V of the complaint.

Challenge is a manufacturer of precision parts. Mattison manufactures the large machines which in turn make the precision parts. Defendant J. Lee Hackett Company occasionally acts as Mattison's sales representative. In October of 1978, Challenge and Hackett began negotiations for the purchase by Challenge of a Mattison precision surface grinder. A price quotation was sent at that time, followed by two addenda in January of 1979. On January 31, 1979, Hackett issued proposal number W-2818-22 to Challenge, which became the final price quotation. That proposal, as well as the two addenda, included the following language:

"We propose to furnish the material specified below at the prices quoted and subject to the terms and conditions stated on the reverse side of this form which are hereby expressly made a part of this offer. No different or additional terms contained in any purchase order, acceptance or other form shall be binding upon us."

The final price quotation also included, as part of the quotation, a copy of Mattison's Terms and Conditions of Sale. That form provided that the sale was subject only to the terms and conditions included therein and that any order containing

* Circuit judge, sitting on the Court of Appeals by assignment.

additional or inconsistent terms would not be binding on Mattison unless accepted in writing by an authorized officer. Mattison limited its liability to replacing or repairing parts, disclaimed all other express and implied warranties, and disclaimed all liability for consequential damages.

On February 2, 1979, Challenge responded to the quotation by sending to Hackett its purchase order No. 09390 which included the following provision:

"IMPORTANT: This offer consists of the terms on the front AND reverse sides hereof and buyer expressly limits acceptance to the terms hereof and no different or additional terms proposed by seller shall become part of the contract."

The second page of the purchase order included a warranty provision which stated that the seller warranted that the machine would be free from all defects, be of good quality, and conform strictly to all specifications. An indemnity clause further provided that the seller would indemnify Challenge for all damages to persons or property arising out of or in any way connected with the precision grinder. A Hackett sales manager signed the purchase order and returned a copy to Challenge.

On January 30, 1980, the grinder was delivered to Challenge, and was installed the next month. At various times during the next nine months, service personnel from Mattison and Hackett inspected, adjusted, and made repairs to the grinder, which was out of commission for approximately six of those months. There is no dispute that since October, 1980, the machine has peformed to Challenge's satisfaction.

In January, 1981, Challenge filed suit seeking over $96,000 in damages for lost production time,

wear and tear on other machines, and expenses involved in having other companies complete their projects. Counts I-IV asserted breach of an express warranty, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, and breach of contract. Count V alleged that defendants had negligently installed the grinder. Thereafter, defendants moved for summary judgment pursuant to GCR 1963, 117.2, subds (1) and (3). By written opinion, dated December 17, 1982, and order, entered December 30, 1982, defendants' motions were granted as to counts I-IV but denied as to count V. The court found that the limitation of warranties and damages provisions in the Hackett and Mattison offer were effective because the offer expressly limited acceptance to those terms. Thus, although recognizing the conflicting terms contained in Challenge's purchase order, the court found, based on MCL 440.2207(2); MSA 19.2207(2), that the provisions did not cancel each other out. Summary judgment on count V was denied, the court finding that the limitation of damages provision did not apply to damages resulting from defendants' negligence in the performance of their contractual obligations.

In resolving the issue of whether the trial court properly granted summary judgment, we are faced with the task of determining whether the forms exchanged by the parties created a contract and, if so, what the terms of that contract are. In resolving the threshold question, it is necessary to consider MCL 440.2207; MSA 19.2207, Michigan's statutory adaptation of the Uniform Commercial Code "Battle of the Forms" provision. Subdivision (1) provides:

"A definite and seasonable expression of acceptance

or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

Thus, in order to determine whether a contract has been formed, it is necessary to determine which of the forms constituted the "offer" and which form constituted the "acceptance". Both the Hackett price quotation and the Challenge purchase order purported to be offers. Given the use of standardized forms, the language employed by the parties will not always be determinative. Courts must often look beyond the words employed in favor of a test which examines the totality of the circumstances. See, *e.g., Mead Corp v McNally-Pittsburg Mfg Corp,* 654 F2d 1197 (CA 6, 1981).

After reviewing the forms of the parties, the trial court found, and we agree, that the January 31, 1979, proposal by Hackett constituted the offer. Challenge and Hackett had engaged in a series of negotiations concerning the purchase of the surface grinder for several months prior to the submission of the final price quotation. That proposal was "accepted" by Challenge two days later on February 2, 1979. Challenge's purchase order was responsive to the Hackett proposal and made specific reference to that form, both by date and number. We find no grounds to disturb the lower court's determination and, thus, proceed on the basis that the January 31 proposal constituted an offer by Hackett and Mattison for the sale of the grinder to Challenge.

Next we turn to the question of whether the February 2 purchase order by Challenge amounted to an acceptance of the Hackett proposal or

whether it was a conditional acceptance or counter-offer. At common law, the failure of the responding document to mirror the terms of the offer would have precluded the formation of a contract. The UCC, however, altered this "mirror-image" rule by providing that the inclusion of additional or different terms would not prevent the acceptance from being operative unless the acceptance was made conditional on the assent of the other party to those additional or different terms. MCL 440.2207(1); MSA 19.2207(1).

Clearly, the form submitted by Challenge included terms different from those contained in the Hackett proposal. However, after careful review of the documents, we do not find that Challenge expressly made its acceptance conditional on Hackett's and Mattison's assent to those different terms. The conditional assent provision has been narrowly construed to require that the acceptance must clearly reveal that the offeree is unwilling to proceed unless assured of the offeror's assent to the additional or different terms. See, *e.g., Idaho Power Co v Westinghouse Electric Corp,* 596 F2d 924 (CA 9, 1979); *Dorton v Collins & Aikman Corp,* 453 F2d 1161 (CA 6, 1972). We find nothing in the purchase order which illustrates Challenge's unwillingness to proceed unless it obtained the assent of the sellers. Contrariwise, we find that the purchase order was responsive to the price quotation and that it was a "definite and seasonal expression of acceptance" as required by UCC § 2-207. Thus, we agree with the trial court that the writings of the parties do establish a contract. Therefore, we will not address Challenge's argument regarding UCC § 2-207(3), MCL 440.2207(3); MSA 19.2207(3) inasmuch as that section only comes into play if the writings fail to establish a

contract but the conduct of the parties recognizes the existence of such a contract.

On the question of the terms of the parties' contract, we disagree with the trial court and find that the conflicting provisions of the forms did cancel each other out and did not become a part of the contract. It is important to note at this point that both the trial court and the defendants rely on § 2-207(2) in support of the position that the warranty and remedy provisions contained in the Hackett and Mattison documents should control. MCL 440.2207(2); MSA 19.2207(2) provides:

"The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) the offer expressly limits acceptance to the terms of the offer;

"(b) they materially alter it; or

"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

We find that § 2-207(2) is inapplicable to the present case and that reliance on that section is misplaced.

Although recognizing that Challenge's purchase order contained conflicting provisions, the trial court found that subsection (a), quoted above, prevented those provisions from cancelling out the contrary provision in the Hackett/Mattison proposal. In reaching that conclusion, the trial court did not distinguish between "additional" or "different" terms but held that the Hackett and Mattison forms expressly limited acceptance to the terms contained in the offer itself and therefore fell within the ambit of § 2-207(2)(a). The court apparently did not give any weight to the language in Challenge's purchase order, which similarly pro-

vided that no additional or different terms of the seller would be binding on Challenge.

Defendants acknowledge on appeal that § 2-207(2) is phrased in terms of "additional" terms, as opposed to different or additional terms, but argue that the phrase subsumes all new terms, either different or additional, within its scope. While this theory is not without some support, see, Utz, *More on the Battle of the Forms: The Treatment of "Different" Terms Under the Uniform Commercial Code,* 16 UCC L J 103 (1983), we decline to follow that approach and instead rely on decisions of our appellate courts.

In *American parts Co, Inc v American Arbitration Ass'n,* 8 Mich App 156, 166; 154 NW2d 5 (1967), Judge (now Justice) LEVIN, made the following observation concerning § 2-207:

> "[It] provides, *inter alia,* that an acceptance or a written confirmation operates as an acceptance even though it states terms additional to or different from those previously offered or agreed upon. *The additional or different terms do not become a part of the contract unless agreed to by the other contracting party, except that between merchants additional, but not different, terms become part of the contract if they do not materially alter it and the other contracting party does not, within a reasonable time, object to the additional terms."* (Emphasis supplied.)

Continuing, Judge LEVIN stated that § 2-207 would validate agreements between parties even though their written documents did not match perfectly in the common-law tradition. Thus, the parties are able to enforce their agreement, despite discrepancies in the exchanged forms, "if enforcement can be granted without requiring either party to be bound to a material term to which he has not agreed". *Id.,* pp 167-168.

In *Bosway Tube & Steel Corp v McKay Machine Co,* 65 Mich App 426; 237 NW2d 488 (1975), *lv den* 397 Mich 817 (1976), a panel of this Court was faced with the situation of a conflict between the warranty provisions of the parties' written offer and acceptance. Although acknowledging that § 2-207(1) would permit a finding that a contract had been made despite the inclusion of *different* terms in the acceptance, the Court referred to § 2-207(3) and found that a contract could be established by the conduct of the parties. In that case, the terms of the contract would consist of those terms agreed upon by the parties and other terms would be supplied by the code itself. Given the conflict in the warranty provisions of the writings, neither provision became a part of the contract.

A similar result was obtained in *S C Gray, Inc v Ford Motor Co,* 92 Mich App 789; 286 NW2d 34 (1979), *lv den* 408 Mich 869 (1980). In *S C Gray,* the quotation (offer) and the purchase order (acceptance) contained conflicting warranty provisions. Even though the offeror (Gray) orally objected to the contrary terms in the purchase order, the Court found *Bosway* controlling and held that where the writings conflict as to warranties, neither provision becomes part of the contract. Continuing, the Court stated that the reason for discarding the conflicting provisions was because it was assumed that each party objected to the other's conflicting clause. See UCC § 2-207, Official Comment 6.

In the present case, relying on § 2-207(2)(a), the trial court distinguished *S C Gray* on the basis that the Hackett and Mattison offer limited Challenge's acceptance to the terms of the offer itself. The court continued by noting that the parties had the right under the UCC to limit warranties and damages and that defendants had done so in the

present case. While we agree with the trial court that parties to a contract may agree to limit their warranties and damages upon breach, we do not find that the *parties* agreed to such action in the prsent case. Thus, we find that the trial court erred by giving effect to the provisions contained in the Hackett and Mattison offer.

The error in the trial court's reasoning comes in its attempt to distinguish the present case from that of *S C Gray.* Although it was not expressly stated, it is clear that the Court in *S C Gray* refused to apply § 2-207(2)(c), the notification of objection provision, to support a finding that the offeror's terms prevailed over the conflicting terms in the offeree's purchase order. Instead, the Court held that if the offeror wanted its warranty provision to control over the contrary provision contained in the acceptance, the offeror should have taken additional steps to obtain the offeree's consent to those terms. Such is the situation in the present case. Although each party attempted to forestall the inclusion of any additional, different, or inconsistent terms into the contract, the end result of such manuevering was to cancel out the conflicting provisions. As noted in *S C Gray,* the reason for discarding the conflicting provisions is that it is assumed that each party objected to the other's contrary clause. A different interpretation would lead to the anomalous result of requiring a party to abide by the terms of a contract to which he never agreed and indeed to which objection had been taken. In such a case, we find that neither provision becomes a part of the contract and that the provisions of the UCC will be given effect. Thus, we hold that the trial court erred in dismissing counts I through IV of plaintiff's complaint.

We find no error in the trial court's treatment of

count V of the complaint. Challenge alleged the commission of a tort, negligent installation of the surface grinder, separate from its breach of warranty claims. Accepting all of Challenge's allegations as true for purposes of the motion, GCR 1963, 117.2(1), we find that Mattison's motion for summary judgment was properly denied. Negligent performance of an undertaking, even though grounded upon a contractual relationship, may constitute an actionable tort as well as a breach of contract. *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967).

We reverse the order of the circuit court dismissing counts I through IV of Challenge's complaint and affirm the order denying summary judgment on count V. Therefore, this case is remanded to the lower court for further proceedings in this matter. Costs to plaintiff.