**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KVAERNER ASA; J.A. JONES,
INCORPORATED,
<u>Plaintiffs-Appellees,</u>

v.

THE BANK OF TOKYO-MITSUBISHI,
LIMITED, NEW YORK BRANCH, as an
agent on behalf of itself,
<u>Defendant-Appellant,</u>

No. 99-1368

and

BARCLAYS BANK PLC, NEW YORK
BRANCH; BAYERISCHE VEREINSBANK,
AG, NEW YORK BRANCH; CREDIT
SUISSE FIRST BOSTON, NEW YORK
BRANCH; DAI-ICHI KANGYO BANK,
LIMITED NEW YORK BRANCH; THE
FUJI BANK, LIMITED,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-98-308-5-BO)

Argued: February 29, 2000

Decided: April 17, 2000

Before WIDENER and LUTTIG, Circuit Judges,
and G. Ross ANDERSON, Jr., United States District Judge
for the District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in which Judge Widener and Judge Anderson joined.

_____

**COUNSEL**

**ARGUED:** Thomas Joseph Hall, CHADBOURNE & PARKE, L.L.P., New York, New York, for Appellant. Douglas Leo Patin, SPRIGGS & HOLLINGSWORTH, Washington, D.C., for Appellees. **ON BRIEF:** Brian A. Miller, CHADBOURNE & PARKE, L.L.P., New York, New York; L. Neal Ellis, Jr., Albert Diaz, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant. Mark J. Blando, SPRIGGS & HOLLINGSWORTH, Washington, D.C.; Neil E. McDonnell, DORSEY & WHITNEY, L.L.P., New York, New York; Gregory J. Murphy, MOORE & VAN ALLEN, Charlotte, North Carolina, for Appellees.

_____

**OPINION**

LUTTIG, Circuit Judge:

Kvaerner and Jones filed a petition to compel the Bank of Tokyo to arbitrate disputes related to the performance of a construction contract, which performance Kvaerner and Jones had guaranteed to the Bank through formal Guaranties. The district court held that under the Guaranties, read in conjunction with the underlying construction contract, the Bank was required to arbitrate its disputes with Kvaerner and Jones. For the reasons below, we affirm.

I.

On April 8, 1993, BCH Energy, L.P. ("BCH" or the "Owner") entered into a Turnkey Design and Construction Agreement ("Construction Agreement" or "Agreement") with general contractor Metric/Kvaerner Fayetteville, a joint venture, for the purpose of constructing a waste-to-energy plant in Fayetteville, North Carolina. The joint venture was formed by Kvaerner Environmental Technologies, Inc. ("Kvaerner"), an indirect subsidiary of Kvaerner, and Metric

2

Contractors, Inc. ("Jones"), a subsidiary of Jones. A syndicate of New York branch banks, with the Bank of Tokyo (the "Bank") acting as lead agent, financed the project, providing over $70 million in credit support to the joint venture.

On November 16, 1993, Kvaerner and Jones executed Guaranty Agreements to "irrevocably and unconditionally guarantee[] the punctual performance of each and every obligation of[the joint venture] under the [Construction] Agreement." J.A. 18 (Kvaerner Guaranty, at ¶ 2); J.A. 26 (Jones Guaranty, at ¶ 2).[1] In the event the joint venture did not perform its duties under the Construction Agreement, the Guaranties could be enforced against Kvaerner and Jones. The Bank of Tokyo signed the Guaranties on behalf of the banks. Kvaerner and Jones also provided the Guaranties to BCH, the owner of the project.

Construction and acceptance testing on the project were completed in 1996. BCH and the joint venture had a dispute about the project, and BCH then took possession of it. In September 1996, BCH sent the joint venture a notice of default under the Construction Agreement. Pursuant to an arbitration clause in the Construction Agreement, BCH and the joint venture began arbitration proceedings in October 1996.

In December 1996, BCH shut down the operation of the project, and the project was unable to make payments on the banks' financing. On January 14, 1997, the Bank filed an action for breach of the Guaranties against Kvaerner and Jones in the Supreme Court of New York County in New York. The New York Appellate Division dismissed the action against Jones because it was without personal jurisdiction over Jones. As to Kvaerner, the court granted Kvaerner's motion to stay the action pending the outcome of the BCH arbitration. The Bank subsequently refiled its breach of Guaranty action against Jones in federal court in New York.

On November 12, 1997, the Bank filed an involuntary Chapter 7 Bankruptcy Proceeding against BCH in the District of Delaware. The

_____

[1] Because the provisions relevant to the present case are identical, we will refer to both the Kvaerner Guaranty and the Jones Guaranty collectively as the "Guaranties."

3

BCH arbitration with the joint venture was then automatically stayed, which stay continues to be in effect.

On April 13, 1998, Kvaerner and Jones filed a demand for arbitration with the American Arbitration Association, seeking to arbitrate the Bank's claim against them for breach of the Guaranties, which is the subject of the New York state action against Kvaerner and the New York federal action against Jones. On April 14, 1998, Kvaerner and Jones filed a petition to compel the bank to arbitrate in the Eastern District of North Carolina. The district court granted the petition to compel arbitration, finding that an agreement to arbitrate existed between the parties. Accordingly, the Bank has participated in arbitration proceedings under a reservation of right with respect to this appeal.[2]

## II.

The Construction Agreement, to which the owner BCH and the joint venture are parties, includes a broad arbitration clause requiring that disputes "arising out of or relating to" the Agreement be submitted to arbitration in North Carolina.[3] The Guaranties, to which BCH, Kvaerner and Jones, and the Bank are parties, however, do not specifically address the question whether arbitration is required for disputes among the parties to the Guaranties. The question in this case is

_____

[2] Kvaerner and Jones filed a Motion for Leave Requesting that the Court Take Judicial Notice of events that have occurred since the filing of the notice of appeal. These materials primarily relate to the arbitration proceedings currently under way. Because the facts and legal contentions are adequately presented in the materials before the court, we deny the motion.

[3] It is undisputed that the Construction Agreement requires that disputes under that Agreement be submitted to arbitration:

> Any dispute, controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration held in Raleigh, NC, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

J.A. 36 (Construction Agreement, Art. 15, Sec. 15.1).

4

whether the Guaranties executed by Kvaerner and Jones to secure the loans for the project require the Bank to submit to arbitration.

The district court concluded that the arbitration clause of the Construction Agreement was incorporated into the Guaranties, and that the Bank was required to submit to arbitration in the present case because the dispute related to the Construction Agreement.**4** We agree. Although the Guaranties do not specifically reference arbitration, they do include a provision that gives Kvaerner and Jones the same "rights and remedies" as are available to the joint venture under the Construction Agreement:

> Each and every default or failure by [the joint venture] in making payment or otherwise discharging or performing any of the Guaranteed Obligations shall give rise to a separate liability of [the joint venture] to [the Bank] and a separate cause of action hereunder and a separate suit may be brought hereunder as each liability or cause of action arises. Upon receipt of notice of default, [Kvaerner and Jones] shall have the same rights and remedies of [the joint venture] under the [Construction] Agreement , including without limitation the benefit of any remaining cure periods granted to [the joint venture] pursuant to the[Construction] Agreement.

J.A. 20 (Kvaerner Guaranty, at ¶ 4) (emphasis added); J.A. 28 (Jones Guaranty, at ¶ 4) (emphasis added). This provision of the Guaranties

_____

**4** In addition to holding that the underlying dispute was whether the joint venture had substantially completed the project, the court also found that the Bank had essentially stepped into the shoes of BCH as a party to the Construction Agreement. It appears that the district court reasoned that because such a dispute related to the Construction Agreement, and because the Bank could be considered to be a party to the Agreement after forcing BCH into bankruptcy, the Agreement's arbitration clause was applicable to the present action. Because we agree with the district court that the Guaranties incorporate the arbitration provision and the present dispute relates to the Construction Agreement, we do not also address the question whether the Bank has now replaced BCH as a party to the Construction Agreement.

5

operates to incorporate into the Guaranties the rights and remedies available to the joint venture under the Construction Agreement. One of the rights available to the joint venture under the Agreement is the right to arbitrate disputes "arising out of or relating to" the Construction Agreement. Under paragraph 4 of the Guaranties, Kvaerner and Jones have the same right -- the right to arbitrate disputes -- as the joint venture has under the Agreement. Thus, paragraph 4's rights and remedies clause grants Kvaerner and Jones the right to arbitrate disputes that arise out of or relate to the Construction Agreement. Cf. Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 978 (4th Cir. 1985) ("It is well settled that, under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into a subcontract by reference to an arbitration provision in a general contract.").

The disputes between the Bank and Kvaerner and Jones arise out of and relate to the Construction Agreement. The central dispute for which Kvaerner and Jones have moved to compel the Bank to arbitrate is the Bank's contention that the joint venture never substantially completed the project under the Construction Agreement. In fact, in both of the breach of Guaranty actions the Bank has brought against Kvaerner and Jones in federal court in New York and in New York state court, the primary subject of the disputes has been the Bank's contention that the joint venture did not substantially complete the project. See, e.g., J.A. 74-80 (Bank's Complaint in the Supreme Court of the State of New York); J.A. 187-92 (Bank's Complaint in the U.S. District Court for the Southern District of New York). Substantial completion of the project relates directly to the Construction Agreement, because the project itself, and all of the relevant specifications, are defined in the Construction Agreement, and not in the Guaranties. Accordingly, paragraph 4's rights and remedies clause grants Kvaerner and Jones the right to arbitrate the disputes at issue between them and the Bank.

The Bank argues both that paragraph 4 of the Guaranties does not incorporate the Construction Agreement's arbitration provision and that another provision in the Guaranties evinces that the parties did not intend to submit their disputes to arbitration. First, as to paragraph 4, the Bank argues that because the sentence preceding the "rights and remedies" sentence permits "a separate suit [to] be brought," and a "suit" refers to an action in litigation, the parties could not have

6

intended that "rights and remedies" would incorporate a requirement to arbitrate. However, even if the Bank is correct that a "suit" refers only to an action brought in court, and not to an action brought in arbitration, our reading of the second sentence as permitting Kvaerner and Jones to compel arbitration is entirely compatible with the preceding "suit" sentence. We read the "suit" sentence as merely articulating that the Bank is not required to bring all actions arising from default under the Guaranties at one time, but rather that the Bank may bring an action, or even suit in a court of law, for each default as it occurs. Nothing in the sentence precludes Kvaerner and Jones from compelling the Bank to arbitrate before suit can be brought in a court of law. Read with the "suit" sentence, the "rights and remedies" sentence entitles Kvaerner and Jones to invoke its right to arbitrate disputes each time the Bank alleges a default.

The Bank also argues that the Construction Agreement's requirement that all disputes be submitted to arbitration is neither a right nor a remedy as the terms should be understood in paragraph 4.[5] Rather, the Bank contends that arbitration is merely a "process." There is no definition of "rights and remedies" in either contract. However, a "right," as commonly understood in the contract context, includes claims a party can make as against the other parties by virtue of contract provisions. Thus, the arbitration provision in the Construction Agreement creates a right in both parties to the Agreement to have any dispute relating to the Agreement arbitrated. If either BCH or the

_____

[5] The Bank cites an unreported case from the United States District Court for the Southern District of New York, <u>Minera Alumbrera Ltd.</u> v. <u>Fluor Daniel, Inc.</u>, No. 98 CIV 5673 AGS, 1999 WL 269915 (S.D.N.Y. May 4, 1999), as a case in which a federal court held that a provision similar to the one in the present case did not incorporate the arbitration provision of a related contract. <u>See</u> Appellant's Br. at 23. In addition to having no precedential value, <u>Minera</u> is distinguishable from the present case. In <u>Minera</u>, the provision incorporated the "limitations on remedies" from the second agreement. The "rights and remedies" language in the present case includes "rights," which is broad enough to incorporate the arbitration provision from the Construction Agreement. Additionally, the second agreement in <u>Minera</u> included a provision that defined the exclusive remedies in the contract, thereby defining what "limitations of remedies" meant in the incorporation clause. No such definition of "rights and remedies" exists in the Construction Agreement in this case.

7

joint venture attempted to circumvent the arbitration provision under the Agreement, the other party would have an enforceable right to compel arbitration. That arbitration itself is a"process," as the Bank argues, does not disaffirm that the arbitration <u>provision</u> creates a right.

The Bank also argues that, apart from paragraph 4, another provision of the Guaranties indicates that the parties agreed to submit disputes to litigation, not to arbitration. Paragraph 14 in the Guaranties is a jurisdictional consent provision, which prohibits Kvaerner and Jones from contesting jurisdiction in an action brought against them in federal court in the State of New York:

> For the purposes of this Guaranty only and for no other purposes, <u>[Kvaerner and Jones] hereby irrevocably submit[] to the jurisdiction of any Federal court sitting in the State of New York, United States of America in any action or proceeding arising out of or relating to this Guaranty, and [Kvaerner and Jones] hereby irrevocably agree[] that all claims in respect of such action or proceeding may be heard and determined in such Federal court</u>. [Kvaerner and Jones] hereby irrevocably waive[], to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. . . . [Kvaerner and Jones] agree[] that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law.

J.A. 22-23 (Kvaerner Guaranty, at ¶ 14(a)) (emphasis added); J.A. 31-32 (Jones Guaranty, at ¶ 14(a)) (emphasis added). The Bank reads this provision of the Guaranties to require Kvaerner and Jones to submit to litigation in a federal court in New York, and reasons that this specific agreement to submit to litigation supersedes any general incorporation of rights and remedies from the Construction Agreement. However, paragraph 14 is merely a consent to jurisdiction clause through which Kvaerner and Jones waive the right to contest jurisdiction in the event the Bank sues them in federal court in New York. If there were no dispute related to the Construction Agreement -- there was a question over financing or interest, for example -- the Bank could sue Kvaerner and Jones in federal court, and they could

8

not then argue that that court had no jurisdiction over the dispute. However, under paragraph 4, Kvaerner and Jones would still be entitled to invoke their right to arbitrate any disputes related to or arising out of the underlying Construction Agreement.

For the reasons above, we conclude that the district court did not err in holding that the Bank was required to arbitrate its disputes with Kvaerner and Jones.

AFFIRMED

9