NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0686n.06
Filed: September 8, 2006

## No. 04-1727

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROBERT BOSCH CORPORATION, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ASC INCORPORATED, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, BATCHELDER, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge. Defendant ASC Inc. appeals the grant of Plaintiff Robert Bosch Corp.'s ("Bosch") motion for summary judgment enforcing a mandatory arbitration clause contained in Bosch's quotations, but not in ASC's purchase orders. For the reasons set forth below, we affirm.

## I.

Bosch is a Delaware corporation engaged in designing and fabricating machinery parts with its principal place of business in Illinois. ASC is a specialty automotive producer incorporated and doing business in Michigan. On or about July 13, 2001, ASC issued a written "Request for Quotation" for an "Engine Cooling Fan Assembly" ("ECF") seeking the "cost for prototype and production volumes" at 12,000 vehicles per year. All other terms were left open.

On March 16, 2002, Bosch faxed a "Quotation for Engine Fan Assembly" for $ 60.00 at 12,000 units. It included a handwritten notation: "Prod. Tooling $ 160,000," and also stated that

"Bosch standard terms and conditions apply where otherwise not specified." However, no terms were printed on the form or appended thereto.

ASC issued several purchase orders ("POs") which are divisible into two categories: "Tooling POs" and "Blanket POs." The first PO ASC issued was a Tooling PO, number T31748A from May 14, 2002. The PO description referenced "Cooling Fan Assembly- prod Tooling" and that the "PURCHASE ORDER ISSUED PER COMPONENT RELEASE ON ECA 1564P DATED MARCH 16, 2002." ASC later issued a Blanket PO on August 10, 2002, ordering ECFs at $ 60.00, and referencing "COMPONENT RELEASE ON ECA 01564F DATED JULY 16, 2002." The parties agree that this referenced Bosch's July 16, 2002 quotation.

In the spring of 2003, ASC unilaterally cancelled the ECF contract with Bosch. Bosch filed its complaint requesting damages for breach of contract and declaratory relief enforcing the arbitration clause contained in the terms and conditions incorporated in the quotations. Bosch's terms and conditions, which the parties agree were not appended to any of the quotations, provided that "The parties agree to submit all such disputes to binding arbitration which shall be held in Chicago, Illinois." The district court granted Bosch's motion for partial summary judgment on the declaratory judgment claim on the basis that Bosch's quotation was the offer and the terms were incorporated by reference. Moreover, because ASC had no conflicting term, the arbitration clause in the offer controlled.

## II.

We review the grant of summary judgment concerning arbitrability *de novo*. *See First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 948 (1995).

**A.**

This case arises under the diversity statute, 28 U.S.C. §1332. Therefore, state law supplies the substantive rules of decision; and, as the forum state, Michigan supplies the choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941) (A federal district court sitting in diversity must apply the choice-of-law rules of the forum state).

In contract cases, Michigan has adopted a policy-centered approach based upon the Restatement (Second) of Conflict of Laws, which "require[s] a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." *Equitable Life Assur. Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). Under the restatement, a court looks to the state where the contract was negotiated and formed, and where the subject of the contract was located. *See* Rest. 2d of Conflict of Laws § 188(2). Generally, if a foreign state demonstrates no interest in the contract, there is an irrebuttable presumption in favor of the forum state. *See Southerland v. Kennington Truck Serv. Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). Here, Illinois was not the location of the negotiation, consummation or performance, nor the location of the subject matter. Therefore, Michigan law controls arbitrability.

**B.**

ASC argues that the "Terms & Conditions Of Sale" Bosch cites were never sent to it, and therefore, because ASC had no notice of them they never became a part of the contract. However, Bosch sent seven quotations, each stating that "Bosch standard terms and conditions apply unless otherwise specified." Michigan law permits a party to incorporate terms or documents from other writings. *See Forge v. Smith*, 580 N.W.2d 876, 881-82 (Mich. 1998). A party may not plead

ignorance as an excuse if the contract is clear on its face that such terms were intended to be incorporated. *See Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 848 (Mich. 1991) ("It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions."). To the extent ASC contends that the term was not capitalized or otherwise point to a specific document, the argument fails. In *Forge*, the Michigan Supreme Court held that a contract provision incorporating "architectural specifications" was sufficiently specific to conclude that it "clearly refers for some of its terms to an extraneous document." 580 N.W.2d at 882 (internal quotations and citation omitted). Notably, those terms were not capitalized either, nor did they cite the title of the outside document. Thus, we find that the language clearly and unambiguously evinced an intent to incorporate Bosch's standard terms and conditions. ASC's proffered alternate construction is both unreasonable and irrelevant because the issue is notice, and ASC fails to explain why no one bothered to pick up the phone to seek clarification.

**C.**

ASC contends that even if Bosch's terms are validly incorporated, it is not bound by the arbitration clause because (1) its PO was the offer and the clause was a material addition, (2) the PO was a conditional acceptance and the fact that Bosch signed the Tooling PO meant that it accepted the terms therein to the exclusion of those on its own form; and (3) its reservation of rights and remedies clause cancelled out the arbitration clause.

**1**.

Generally, an offer is a manifestation of one's intent to be bound, stating the essential terms with sufficient specificity that acceptance by another will conclude the bargain. *See Challenge Machinery Co. v. Mattison Machine Works*, 359 N.W.2d 232, 235 (Mich. Ct. App. 1984). Here, both of the parties' forms purported to be offers, and Bosch's form also contemplated that it could be a conditional acceptance. However, "[c]ourts must often look beyond the words employed in favor of a test which examines the totality of the circumstances." *Id.* Bosch's July 16, 2002 quotation specified price and quantity, among other things. ASC's Blanket PO of August 10, 2002, specifically referenced Bosch's July 16, 2002 quotation. Thus, we agree with the district court that Bosch's July 16, 2002 quotation was an offer because it stated the essential terms and that ASC's August 10, 2002 PO was an acceptance of Bosch's July 16, 2002 quotation and offer.

**2.**

Whether ASC's acceptance was conditional turns on whether "the acceptance . . . clearly reveal[ed] that [ASC was] unwilling to proceed unless assured of [Bosch's] assent to the different or additional terms." *Id.* Here, there was no such indication. Although the PO stated that acceptance was limited to its terms, it did not clearly indicate that failure to do so voided the transaction.[1]

ASC also argues that because Michael Chezick of Bosch signed its Tooling PO, its boilerplate controls the entire transaction. Bosch contends that there are two lines of POs – Tooling and Blanket – which constitute separate agreements, and that only the Blanket PO line is at issue

---

[1] To the extent that ASC attempts to broaden the scope of this argument, ASC never raised it below. It is error for a court of appeals to address and resolve an issue not passed on by the district court. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

here because ASC agreed to pay the balance on the Tooling PO. Michigan has clearly signaled

dissatisfaction with such overly formalistic arguments, *see id.,* and they do not alter our conclusion

that Bosch's "standard terms and conditions" were terms of the offer, and ASC's terms were part of

the acceptance. *Cf. id.* at 235-36 (holding that terms of offer were still effective even though offeror

had signed acceptance form).

**3.**

ASC contends that its reservation of rights and remedies clause conflicts with Bosch's

arbitration clause to the extent that it intended to reserve its right to a jury trial and its right to an

appeal. Unlike at common law, where an acceptance had to "mirror" the offer in all respects, the

U.C.C. § 2-207 (codified in Michigan as MCLA § 440.2207) rejected the mirror-image rule, and

permits a party's acceptance to contain additional or different terms.

The parties agree that this is a case of "different" terms. Michigan has adopted the so-called

"knock out rule," which treats different terms in the offer and acceptance as mutually unenforceable.

*See Challenge Machinery*, 359 N.W.2d at 235-37 (holding that parties' forms containing conflicting

warranty provisions "cancel each other out and did not become part of the contract" ). The contract

would thus consist of the terms upon which the parties agreed and any UCC gap fillers. *Id.*

ASC contends that its "Remedies" provision conflicts with Bosch's arbitration clause, and

therefore cancels it out. ASC's provision states:

> **Remedies**. All rights and remedies are reserved to ASC in this Order
> and they shall be considered to be cumulative and in addition to all
> other rights or further remedies as provided by law or equity that is
> not specifically covered or mentioned in these conditions.

Bosch's arbitration provision reads:

> APPLICABLE LAW/ARBITRATION. All disputes between the parties arising out of or related to this agreement or the breach, alleged breach or interpretation thereof shall be governed by the laws of the State of Illinois except for its choice-of-law rules . . . . *The parties agree to submit all such disputes to binding arbitration which shall be held in Chicago, Illinois* . . . . The party prevailing in the arbitration or any other legal proceedings shall be entitled to recover its costs including reasonable attorneys fees incurred due to the arbitration or other legal proceedings. (Emphasis added.)

We believe that "rights and remedies" does not cover the right to judicial fora. We construe a contract according to its objective plain meaning. *See Burkhardt v. Bailey*, 680 N.W.2d 453, 464 (Mich. Ct. App. 2004). We read "rights and remedies" as it is objectively understood to refer to those privileges and claims for redress governing the relationship of the parties "by virtue of the contract's provisions." *See cf. Kvaerner ASA v. Bank of Tokyo-Mitsubishi*, *Ltd.*, 210 F.3d 262, 266 (4th Cir. 2000). Thus, "rights" refers to those privileges that are concomitant to the duties the parties owe under the contract, and "remedies" refers to redress for a breach of those rights. We also do not agree that ASC's broad language triggers the knock out rule. That rule only protects parties against being bound by terms to which they had specifically objected. *See Challenge Machinery*, 359 N.W.2d at 237. Thus, the conflicting term must be specific enough to give notice of a desire for a different term, *id.,* which ASC's broad reservation of rights fails to do.

ASC's contention that it intended to preserve its right to judicial fora is both irrelevant and dubious. First, "[t]he unilateral subjective intent of one party cannot control the terms of a contract." *Burkhardt*, 680 N.W.2d at 464. Second, ASC's failure to specifically reserve the right to a judicial forum is evidence of a lack of intent to do so as it specifically reserved Michigan as the forum state

elsewhere in its terms. *See Bianchi v. Automobile Club of Mich.*, 467 N.W.2d 17, 18 (Mich. 1991)

(selection of one thing but not another evinces an intent to exclude the latter). Finally, the loss of

the right to a civil jury trial is a "fairly obvious consequence" of failing to object to an arbitration

clause and, therefore, does not require an express waiver as ASC contends. *See Cooper v. MRM*

*Investment Co.*, 367 F.3d 493, 506 (6th Cir. 2004).

Our conclusion would not be different if this case were construed as one where the offer

contained a term with no contradicting term in the acceptance. *See Cloud Corp. v. Hasbro, Inc.*, 314

F.3d 289, 295 (7th Cir. 2002) (holding that under the knock out rule, a term in the offer is binding

if there is no contrary term in the acceptance).

**AFFIRMED**.

**JULIA SMITH GIBBONS, Dissenting.** In my view, we should reverse the grant of summary judgment enforcing the arbitration provision. I agree with ASC that its "Remedies" provision conflicts with Bosch's arbitration provision. The most natural meaning of the "rights and remedies" language is that "right" includes a right to judicial resolution of disputes, which encompasses a right to jury trial. The word "remedies" similarly connotes an ability to seek typical contract remedies such as damages, rescission, and specific performance that are available in a court proceeding. I have located no authority guiding us in our interpretation of these provisions. The majority relies only on *Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262, 266 (4th Cir. 2000), which involved substantially different contract provisions and factual circumstances. The operative "rights and remedies" language in *Kvaerner* was located in a Guaranty Agreement that referred to an earlier Construction Agreement containing an explicit arbitration clause. The Guaranty Agreement stated: "Upon receipt of notice of default, [Kvaerner and Jones] shall have the same rights and remedies of [the joint venture] under the [Construction] Agreement . . . ." *Id.* at 265 (alterations in original) (emphasis omitted). This language is not a broad reservation of rights as contained in ASC's purchase order but is rather a narrow provision reserving to Kvaerner and Jones the same rights as the joint venture had "under the Construction Agreement" – rights that included arbitration. As a result, *Kvaerner* is not directly applicable to this case.

In the end, my disagreement with the majority simply amounts to differing understandings of the meaning to be derived from the language of the "rights and remedies" portion of the agreement. I would conclude that the "rights and remedies" provision conflicts with the arbitration provision and is specific enough to have given notice to Bosch that ASC did not agree to the

arbitration clause. Consequently, I would apply the "knock out" rule and find the two provisions

mutually unenforceable.