ACCEPTED
03-14-00782-CV
3837772
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/21/2015 9:02:50 AM
JEFFREY D. KYLE
CLERK

## No. 03-14-00782-CV

_____

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/21/2015 9:02:50 AM
JEFFREY D. KYLE
Clerk

_____

**SANTANDER CONSUMER USA, INC.**
**Appellant,**

**v.**

**MARIO A. MATA, CENTROPLEX AUTOMOBILE RECOVERY, INC., BLAKE THORNTON VANDUSEN, JOHN F. THOMPSON D/B/A CENTROPLEX AUTOMOBILE RECOVERY, INC., AND REDSHIFT INVESTIGATION, INC.**
**Appellees.**

_____

_Appealed from the_
_353rd Judicial District Court_
_Travis County, Texas_
_Cause No. D-1-GN-13-000677_

_____

**JOINT BRIEF OF APPELLEES**

_____

KAREN C. BURGESS
State Bar No. 00796276
STACY ROGERS SHARP
State Bar No. 24052109
Email: kburgess@richardsonburgess.com
Email: ssharp@richardsonburgess.com
**Richardson + Burgess LLP**
221 West 6th Street, Suite 900
Austin, Texas  78701-3445
Telephone: (512) 482-8808
Facsimile: (512) 499-8886
**ATTORNEYS FOR APPELLEES**
**CENTROPLEX AUTOMOBILE**
**RECOVERY, INC. AND JOHN F.**
**THOMPSON**

JOHN S. KENEFICK
State Bar No. 24006294
Email: jkenefick@macdonalddevin.com
JOHN R. SIGETY
State Bar No. 24083853
Email: jsigety@macdonalddevin.com
**Macdonald Devin, PC**
1201 Elm Street, Suite 3800
Dallas, Texas 75270-2130
Telephone: (214) 744-3300
Facsimile: (214) 747-0942
**ATTORNEYS FOR APPELLEE**
**BLAKE THORNTON VANDUSEN**

CHRISTOPHER A. LOTZ
State Bar No. 24031630
Email: clotz@lstlaw.com
DAVID L. TREAT
State Bar No. 20205300
Email: dlt@lstlaw.com
**Lindow ▪ Stephens ▪ Treat LLP**
One Riverwalk Place
700 North St. Mary's Street, Suite 1700
San Antonio, Texas 78205
Telephone: (210) 227-2200
Facsimile: (210) 227-4602
**ATTORNEYS FOR APPELLEE
REDSHIFT INVESTIGATION INC.**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... iv

INDEX OF AUTHORITIES ............................................................................. v

STATEMENT OF THE CASE ......................................................................... 1

ISSUE PRESENTED ....................................................................................... 2

STATEMENT OF FACTS ............................................................................... 2

SUMMARY OF THE ARGUMENT .............................................................. 4

ARGUMENT .................................................................................................... 5

    I.   Santander and Cross-Defendants have executed no arbitration agreement. ............................................................................................... 5

    II.  Cross-Defendants cannot be compelled to arbitrate under the agreement between Mata and Santander. .............................................. 7

        A.  Arbitration cannot be compelled because Cross-Defendants are not parties to the Sale Contract. ........................................... 7

        B.  None of the exceptions that would allow nonsignatories to be compelled to arbitration applies here. .................................... 9

    III.  Plaintiff never served the Centroplex Defendants, so only cross-claims exist against them, and Santander agrees those are not arbitrable. ....... 15

    IV.  The Court Should Award Reasonable Fees to Cross-Defendants. ......... 16

PRAYER ......................................................................................................... 18

CERTIFICATE OF COMPLIANCE ............................................................ 22

CERTIFICATE OF SERVICE ...................................................................... 22

APPENDIX ..................................................................................................... vi

# INDEX OF AUTHORITIES

**Cases**

*Bob Montgomery Chevrolet, Inc. v. Dent Zone Co.*, 409 S.W.3d 181 (Tex. App.—Dallas 2013, no pet.). ...................................................................................12

*Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347 (5th Cir. 2003) .......... 10, 11, 14

*Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489 (Tex. App.—Dallas 2011, pet. denied)......................................................................................................11

*E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Slack*, 916 F. Supp. 2d 719 (E.D. Tex. 2013) ............................................................................................14

*Gililland v. Taylor Inv.*, No. 11-03-00175-CV, 2004 WL 2126755 (Tex. App.—Eastland Sep. 23, 2004, pet. denied).............................................. 16, 17

*Hunt v. CIT Grp./Consumer Fin., Inc.*, 03-09-00046-CV, 2010 WL 1508082 (Tex. App.—Austin Apr. 15, 2010, pet. denied) (mem. op.)............................ 19, 20, 21

*In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732 (Tex. 2005) (orig. proceeding) ........................................................................................... 6, 10

*In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007) ........... 6, 8, 14, 15

*Jenkens & Gilchrist, P.C. v. Riggs*, 87 S.W.3d 198 (Tex. App.—Dallas 2002, no pet.) ..............................................................................................16

*Keytrade USA, Inc. v. AIN Temouchent M/V*, 404 F.3d 891 (5th Cir. 2005) ..........13

*Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262 (4th Cir. 2000)....13

*McMillan Comp. Translation Sys.*, 66 S.W.3d 477 (Tex. App.—Dallas 2001, no pet.) ..............................................................................................16

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258 (5th Cir. 2011) ............................................................................................ 11, 12

*SEB Inc. v. Campbell*, No. 03-10-00375-CV, 2011 WL 749292 (Tex. App.—
Austin Mar. 2, 2011, no pet.)(mem. op). ........................................................ 16, 17

*Smith v. Brown*, 51 S.W.3d 376 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)
.................................................................................................................20

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468
(1989). .................................................................................................................6

**Statutes**
TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). ....................................................17

## STATEMENT OF THE CASE

Mario Mata claims he was injured during the repossession of his Chevrolet Suburban when he grasped hold of the rear bumper of the vehicle. (*See* CR 6 at ¶11.) Mata brings tort, contract, and DTPA claims, alleging the repossession should not have occurred because he paid off the Suburban in full. (*Id.* ¶¶ 10–11.) Mata financed his purchase of the Suburban through a Sale Contract he executed with Appellant–Defendant Santander's predecessor. (*See* CR 71-72.) The Sale Contract had an arbitration agreement. (CR 76-80.)

Mata filed suit against and served Santander, Redshift Investigation, Inc. ("Redshift"), and repossession agent Blake Vandusen. Mata did not serve the remaining named Defendants. After the limitations period expired on Mata's claims, Santander brought Centroplex Automobile Recovery, Inc. ("Centroplex") and Centroplex's president, John Thompson, into the case by asserting cross-claims for contribution and indemnification against Centroplex, Thompson, Redshift, and Vandusen (collectively, "Cross-Defendants"). (CR 47-54.) Santander then moved to compel both Plaintiff and Cross-Defendants to arbitration. (CR 65.) The Cross-Defendants opposed the motion on the grounds that they had not signed an arbitration agreement with any party to the case. The trial court granted Santander's motion to compel as to Mata and ruled that the Cross-Defendants could not be forced to arbitrate. (CR 251-55.)

## ISSUE PRESENTED

Under the Federal Arbitration Act as applied in Texas, arbitration requires consent of all parties. An auto-finance company contracted with independent repossession agents without an arbitration provision. Years later, it added an arbitration clause to its contracts with car buyers. The repossession agents never signed or saw the consumer contracts. In a car buyer's suit against the auto company and repossession agents, can the auto-finance company compel the repossession agents to arbitration?

## STATEMENT OF FACTS

### I. The Service and Recovery Agreements

Santander, under the assumed name of Drive Financial (collectively, "Santander") contracted with Redshift's predecessor, Bay City, (collectively, "Redshift") to handle repossession of vehicles Santander financed. (CR 70.) This Service Agreement was executed in early December 2002 and expressly designated Redshift an independent contractor of Santander. (CR 81 at ¶ 2.)

Redshift later executed a Collateral Recovery Agreement to outsource some of its repossession assignments to Centroplex. (CR 140-52.) When Santander ordered repossession of Mata's Suburban, Redshift tasked Centroplex with the job, and Centroplex sent Mr. Vandusen to pick it up. (CR 119 at ¶ 6.)

It is undisputed that neither the Service Agreement nor the Recovery Agreement contains an arbitration provision. (1 RR 10; *see* CR 81-85; 140-52.)

## II.    The Sale Contract between Mata and Santander

Mata financed the purchase of his Chevrolet Suburban through a Sale Contract with Capitol Chevrolet (now Santander). The two parties executed the agreement for sale and financing of the vehicle on December 28, 2002. (CR 71-72.) They amended the Sale Contract in June 2009, adding an arbitration agreement governed by the Federal Arbitration Act ("FAA"). (CR 75-80.)

It is undisputed that no Cross-Defendant was party to the original or amended Sale Contract, or even saw it. (*See* Appellant's Br. at 8; 1 RR 15.)

## III.    The Arbitration Provision

The Sale Contract is the only contract between any of the parties that includes an arbitration provision, and it is undisputed that none of the Cross-Defendants were party to the Sale Contract. (*See* Appellant's Br. at 8.) Indeed, Santander has stipulated that the Cross-Defendants had never seen the Sale Contract before Santander brought them into this suit. (1 RR 15 ("I can stipulate that these co-defendants had never seen the contract between my client and Mr. Mata.").)

Neither the Service Agreement nor the Recovery Agreement contains a reference to the Sale Contract. (CR 81-85; 140-52.)

## SUMMARY OF THE ARGUMENT

The right to trial by jury requires that arbitration not be ordered against a litigant without the litigant's consent. The Cross-Defendants have never waived this right, so the trial court correctly denied Santander's motion to compel arbitration as to the Cross-Defendants. The relevant facts in this appeal are undisputed: The only contracts signed by any Cross-Defendant in this case contain no arbitration provision, and the Cross-Defendants neither saw nor consented to the Sale Contract between Mata and Santander that did contain an arbitration provision.

Settled law requires that a party sign an arbitration agreement in order to be compelled to arbitrate, and the Cross-Defendants were not signatories to the Sale Contract. Santander seeks to circumvent this rule by citing two of the rule's narrow exceptions—but even the case law Santander cites proves that neither exception applies. First, the "incorporation by reference" exception requires language incorporating the arbitration contract. Santander cites no provision in either the Service Agreement or Recovery Agreement that makes any reference to the Sale Contract, original or amended. Second, the "agency" exception applies only when an agent signs an arbitration agreement on behalf of a principal, and Santander does not claim that it is an agent for the Cross-Defendants. It instead

tries to avoid this problem by relying on a body of cases that ***do not involve compelling a nonsignatory*** to arbitration.

Santander executed no arbitration agreement with the Cross-Defendants. When contracting for the outsourcing of repossession services, Santander did not even include an arbitration provision in that contract. Indeed, Santander conceded to the trial court that it could not compel arbitration as to the cross-claims in this case. Yet, after losing at the trial court, Santander now renews its meritless attempt to compel the Cross-Defendants to arbitrate. Like its trial brief, its appellate brief is void of any support in the facts or law that would allow, much less persuade, a court to order arbitration against nonparties to an arbitration agreement.

The trial court correctly applied the law and facts and declined to order the Cross-Defendants to arbitrate. The holding should be affirmed, and fees should be assessed against Santander.

## ARGUMENT

**I. Santander and Cross-Defendants have executed no arbitration agreement.**

Because Santander and Cross-Defendants have never entered into an arbitration agreement, Santander cannot compel them to arbitration. A party seeking to compel arbitration under the FAA bears the burden of proving that: "(1)

there is a valid arbitration agreement, and (2) the claims raised fall within that agreement's scope." *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "However, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists[.]" *Id.* at 737 (internal quotations omitted). Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate, and the Texas Supreme Court has clarified that these principles mean that the FAA generally "does not require parties to arbitrate when they have not agreed to do so." *Id.* at 738 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989)).

This rule protects litigants' constitutional right to trial by jury, which is shared by plaintiffs and defendants alike. TEX. CONST. art. V, § 10 ("In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury"). Cross-Defendants intend to try this case before a jury, and have at no point waived their right to do so.

Santander seeks to compel Cross-Defendants to arbitration simply because it contracted **with the Plaintiff** to arbitrate. "But the right to a jury trial is not discretionary. . . . If the parties have not agreed to arbitration, no trial court has discretion to make them go. . . ." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193 (Tex. 2007). There is no arbitration agreement between Santander and

6

Cross-Defendants. Only one contract between Santander and any Cross-Defendant is in the record—the Service Agreement—and it contains no arbitration provision. If Santander sought to arbitrate suits involving repossession with its repossession contractors, it could have contracted for arbitration rights in the Service Agreement—or it could have included language expressly incorporating its sale and financing contracts. When given the opportunity, Santander chose *not to include or incorporate* an arbitration provision in the Service Agreement.

Without an agreement to arbitrate between Santander and the Cross-Defendants, binding contract principles prevent Santander from compelling Cross-Defendants to arbitrate this suit.

## II. Cross-Defendants cannot be compelled to arbitrate under the agreement between Mata and Santander.

Lacking an agreement to arbitrate with Cross-Defendants, Santander attempts to compel arbitration based on the Sale Contract it executed with Plaintiff. The Sale Contract is the sole document in the record that contains an arbitration agreement, but Cross-Defendants are not signatories to it. And no exception to the rule against compelling nonsignatories to arbitration applies here.

### A. Arbitration cannot be compelled because Cross-Defendants are not parties to the Sale Contract.

Cross-Defendants cannot be bound by the arbitration agreement in the Sale Contract between Plaintiff and Santander because they did not agree to it.

Under the FAA, the United States Supreme Court "has repeatedly emphasized that arbitration is a matter of consent, not coercion." *In re Merrill Lynch Trust*, 235 S.W.3d at 187 (internal citations omitted). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Id.*

The mere fact that *some parties* must arbitrate has never permitted the court to steer the remaining parties into arbitration, too. *See id.* Where a plaintiff asserted claims against both a company's employees and its corporate affiliates and all defendants moved to compel arbitration, the Texas Supreme Court held that claims against the former *could* be compelled, but that the claims against the affiliates could *not*. *Id.* at 187. Recognizing the inefficiency that is "inherent in resolving these related issues in two different places," the Court nonetheless ruled that "interdependent" conduct of corporate defendants was not sufficient for compelling arbitration. *Id.* at 192. Despite their relationship, "a contract with one corporation—including a contract to arbitrate disputes—is generally not a contract with any other corporate affiliates." *Id.* at 191.[1]

The Texas Supreme Court has thus refused to create an exception simply for convenience's sake. *See id.* at 192 ("efficiency and convenience cannot override either a signatory's arbitration agreement or a nonsignatory's right to a

---

[1] As described in Section B(2), the case at bar lacks an additional key requirement for arbitration: consent. Cross-Defendants are not nonsignatories seeking to enforce an arbitration agreement; they are nonsignatories that Santander seeks to compel to arbitration without their consent.

jury trial."). Santander has now conceded that the Cross-Defendants were not parties to the Sale Contract. (Appellant's Br. at 8.) It has even stipulated that Cross-Defendants had never seen the Sale Contract before this lawsuit commenced. (1 RR 15.) The Cross-Defendants cannot be forced to arbitrate based on an agreement between two outside parties, especially when Cross-Defendants did not even know that agreement existed.

**B.     None of the exceptions that would allow nonsignatories to be compelled to arbitration applies here.**

There are six exceptions to the rule that nonsignatories cannot be bound to an arbitration agreement—none of which apply here. These exceptions are: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Kellogg Brown & Root*, 166 S.W.3d at 739 (citing *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003)). On appeal, Santander argues that two of these exceptions apply. But the Cross-Defendants did not sign a contract incorporating the Sale Contract by reference, and the agency exception to compelling nonsignatory arbitration is inapposite.

**1. Santander waived the incorporation-by-reference exception and, in any event, the exception does not apply to the Agreements here.**

Santander raises the "incorporation by reference" doctrine for the first time on appeal. Despite Cross-Defendants' briefing enumerating the six

exceptions above, Santander never invoked the incorporation exception to the trial court, either in its briefing or at the hearing. Accordingly, the trial court had no opportunity to rule on this basis, and the ground for appeal is waived. *See* TEX. R. APP. P. 33.1(a)(1); *e.g. Bridas*, 345 F.3d at 356 (holding party failed to preserve incorporation-by-reference and assumption arguments); *Carr v. Main Carr Dev., LLC,* 337 S.W.3d 489, 494 (Tex. App.—Dallas 2011, pet. denied)(when considering nonsignatory exception to arbitration, holding that "[b]ecause Carr did not raise the agency issue in the court below, it has not been preserved for our review.")

The incorporation-by-reference exception, even if preserved, would not apply. Cross-Defendants executed no agreement that incorporated the Sale Contract between Plaintiff and Santander, or that incorporated any other arbitration agreement. Terms are incorporated by reference only if "it is clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011). "The language in the signed document must show the parties intended for the other document to become part of the agreement." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.). But Santander stipulates that the Cross-Defendants had never seen the Sale Contract. (1 RR 15.) They could not possibly have "ha[d] knowledge of" or "assent[ed]" to

10

the Sale's Contract terms, *see One Beacon Ins. Co.*, 648 F.3d at 268, and Santander has not argued that they did. (*Cf.* 1 RR 17) (describing Cross-Defendant's knowledge as "irrelevant"). Neither the Service Agreement nor the Recovery Agreement contains the barest mention of the Sale Contract, so the Agreements' "language" cannot even arguably "show the parties intended for the [Sale Contract] to become part of" those Agreements. *See Bob Montgomery Chevrolet, Inc.*, 409 S.W.3d at 189.

The provisions Santander quotes from the Service and Recovery Agreements do not, explicitly or implicitly, incorporate or even reference the Sale Contract. The Service Agreement's quoted provisions specify an intent to perform recovery services for Santander's accounts, and the Recovery Agreement's quoted provisions state the intent for Centroplex to receive recovery assignments from Redshift. (*See* Appellant's Br. at 15.) In stark contrast, the agreements in the two cases Santander relies upon ***do*** contain incorporation provisions. In the first case, the nonsignatory's contract specified that "all terms and conditions, liberties and exceptions . . . ***including the Law and Arbitration Clause, are herewith incorporated***." *Keytrade USA, Inc. v. AIN Temouchent M/V*, 404 F.3d 891, 896–97 (5th Cir. 2005) (emphasis added). In the second case, the nonsignatory's contract explicitly "guaranteed . . . each and every obligation" and adopted "the same rights and remedies" as under the specific contract containing the arbitration

11

provision. *See Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262, 264–65 (4th Cir. 2000). In both cases, the nonsignatory's contract explicitly incorporated the contract containing the arbitration provision ***by name.***

The Agreements Cross-Defendants signed are not even arguably analogous to the contracts in *Keytrade* or *Kvaerner*. No intent to incorporate the Sale Contract is reflected in this record. The incorporation-by-reference exception was not preserved for appeal and, in any event, is inapplicable here.

## 2. Santander's use of the agency exception has no basis in law or fact.

Santander cannot—and does not—argue that it was an agent of Cross-Defendants, so the agency exception does not apply. And none of the authority cited by Santander involved compelling a nonsignatory to arbitration, so its novel reverse-agency theory, even if adopted, would not change the result here.

### a. The agency exception would only apply if Santander were an agent of Cross-Defendants, which it has not alleged to be.

The agency exception binds a nonsignatory only when a party to the arbitration agreement signed as the agent of the nonsignatory. *See Bridas*, 345 F.3d at 356–57. The authority to bind the nonsignatory must exist at the time of signing. *See id.* at 358. An ongoing relationship is not sufficient; Santander "has the burden of proving [the signatory] signed the Agreement as an agent of [the nonsignatory] and not for themselves alone." *See, e.g., E. Tex. Med. Ctr. Reg'l*

12

*Healthcare Sys. v. Slack*, 916 F. Supp. 2d 719, 722 (E.D. Tex. 2013) ("Defendants . . . argue that [the nonsignatory] has an agency relationship [because it is] a wholly owned subsidiary [of the signatory]. A corporate relationship alone, however, is generally not sufficient to bind a non-signatory to an arbitration agreement.")

To satisfy the agency exception, Santander would have to show that, while executing the sale and financing of Mata's vehicle, Santander signed the Sale Contract as an agent of one of the past or future entities handling repossession services for Santander's vehicles. Santander had no authority to bind any of the Cross-Defendants while financing Mata's vehicle. Accordingly, *even Santander* does not argue that it acted as an agent for Cross-Defendants.

### b. Santander's authority is inapposite.

Instead, in an attempt to shoehorn this case into the one doctrine that it preserved for appeal, Santander makes a mirror-image agency argument. Santander's inverted logic urges that its vicarious liability for Cross-Defendants' conduct made ***Cross-Defendants "agents" of Santander*** for purposes of the nonsignatory arbitration exception. But agency law has never overridden the constitutional requirement that all parties consent to arbitration. Whether Cross-Defendants acted as agents of Santander when repossessing the Suburban in 2011 cannot retroactively and forcibly make Cross-Defendants parties to an arbitration

agreement executed two years earlier. "If the parties have not agreed to arbitration, no trial court has discretion to make them go." *Merrill Lynch Trust*, 235 S.W.3d at 192.

Santander cites several nonbinding cases in an attempt to advance its agency argument. But none of these cases even involves compelling a nonsignatory to arbitration. Instead, Santander's cases all involve the reverse—a nonsignatory who *seeks to invoke* an arbitration agreement.[2] *SEB* and *Gililland*, for example, both held a nonsignatory employee of its signatory employer could compel arbitration against the other signatory to the agreement. *SEB*, 2011 WL 749292 at *4; *Gililland*, 2004 WL 2126755 at *3–4. They did not hold that the employee could be forced to arbitrate against his will. *See id.*

"Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas*, 345 F.3d at 358. If an arbitration agreement applied to every nonsignatory who contracted to perform services for a signatory company, the exception would swallow the rule. And it plainly would not satisfy the basic

---

[2] *See SEB Inc. v. Campbell*, No. 03-10-00375-CV, 2011 WL 749292, *4 (Tex. App.—Austin Mar. 2, 2011, no pet.)(mem. op); *Jenkens & Gilchrist, P.C. v. Riggs*, 87 S.W.3d 198, 202–03 (Tex. App.—Dallas 2002, no pet.); *McMillan Comp. Translation Sys.*, 66 S.W.3d 477, 481 (Tex. App.—Dallas 2001, no pet.) (holding agents of signatory "were entitled to the benefit of the arbitration agreement for these claims"); *Gililland v. Taylor Inv.*, No. 11-03-00175-CV, 2004 WL 2126755, *3–4 (Tex. App.—Eastland Sep. 23, 2004, pet. denied). Moreover, *Jenkens & Gilchrist* held the law firm seeking to enforce its client's agreement was *not* an "agent" of its client because the firm was an independent contractor. 87 S.W.3d at 202. Similarly, in the case at bar, the sole contract Santander executed with any of the Cross-Defendants expressly designated Redshift an independent contractor. (CR 81.)

consent requirement of an arbitration agreement. *See In re Merrill Lynch Trust*, 235 S.W.3d at 187. No case has so curtailed the right to jury trial.

The agency exception only operates to compel a party to arbitration when the signatory was acting, at the time of signing, as an agent of a principal. Because Santander plainly—and undisputedly—did not sign the Sale Contract on behalf of the Cross-Defendants, the exception does not apply. There is nothing in the record showing that Cross-Defendants intended to consent to arbitration. They cannot now be compelled to arbitrate this suit under either of the two proffered exceptions.

## III. Plaintiff never served the Centroplex Defendants, so only cross-claims exist against them, and Santander agrees those are not arbitrable.

Centroplex and Thompson (collectively, "the Centroplex Defendants") cannot be compelled to arbitration because, even if the Court accepted Santander's novel arguments, there are no arbitrable claims against them. Santander concedes that the cross-claims in this case cannot be compelled to arbitration. (1 RR 7 ("I don't believe that my client can compel arbitration as to the cross-claims. It's only those claims that are asserted by the plaintiff against all of the defendants.").) Its motion to compel therefore never sought to compel the cross-claims to arbitration. (CR 65 (moving to compel only Plaintiff's claims against the Defendants); 1 RR 34 ("If we were seeking to have the cross-claims arbitrated, yes, then that would be at issue today.").)

As to the Centroplex Defendants, though, cross-claims are the ***only*** claims pending because Plaintiff has never served the Centroplex Defendants with any claims against them. The limitations period has passed in this case. The repossession Plaintiff complains of occurred on February 23, 2011, (CR 6 at ¶ 11,) so the two-year statute of limitations for personal injury expired on February 23, 2013. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). The record reflects that Plaintiff has never served the Centroplex Defendants with any claims, and Santander waited until after limitations expired to serve the Centroplex Defendants with its claims. There are not now, and never will be, claims by Plaintiff against the Centroplex Defendants in this case.

The cross-claims are the only live claims against the Centroplex Defendants, and Santander correctly chose not move to compel the cross-claims to arbitration because of the lack of any arbitration agreement between Santander and the Cross-Defendants. For all the reasons above, and specifically because there are no arbitrable claims by or against the Centroplex Defendants, the trial court's ruling as to the Centroplex Defendants should be affirmed.

## IV. The Court Should Award Reasonable Fees to Cross-Defendants.

The frivolous nature of this appeal warrants, at a minimum, a fee award. The rules provide for damages when "the court of appeals determines that an appeal is frivolous." TEX. R. APP. P. 45. To determine whether to award

16

damages, this Court considers whether the appellant has "reasonable grounds to believe the case could be reversed." *Hunt v. CIT Grp./Consumer Fin., Inc*., 03-09-00046-CV, 2010 WL 1508082, at \*8 (Tex. App.—Austin Apr. 15, 2010, pet. denied) (mem. op.) (citing *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).

Santander has no reasonable basis for curtailing the Cross-Defendants' federal Seventh Amendment and state constitutional rights to jury in this case, particularly as to the Centroplex Defendants. Santander's appeal lacks a single basis in law or fact for overturning the trial court's decision. The relevant facts are undisputed and only one of two briefed issues was preserved for appeal. The sole preserved issue is whether Cross-Defendants, though nonsignatories, can be compelled to arbitrate on the basis of agency. On this issue, Santander fails to cite a single case that involves compelling a nonsignatory to arbitration, and cites no binding authority at all. *See Hunt*, 2010 WL 1508082 at \*8 (awarding fees as damages because of appellant's "unsupported factual statements (and misstatements), repeated failures to preserve error for appeal, and the absence of legal merit in his arguments.").

A reasonable attorney could not fail to conclude that the trial court's ruling would be upheld. *See id; Smith*, 51 S.W.3d at 381 (awarding $5000 in fees because "[n]o reasonable attorney could fail to conclude this court would uphold

17

the trial court's summary judgment"). Indeed, Santander's counsel conceded on the record to the trial court that it could not compel the cross-claims to arbitration, (1 RR 7), yet it persisted in arguing the motion to the trial court and then pursuing the issue on appeal. Cross-Defendants have had to spend unnecessary time and expense defending against, first, Santander's groundless motion, and now its meritless appeal. Santander has thus unnecessarily forced the Cross-Defendants to expend considerable resources—all to simply defend their constitutional right to be heard in court.

Consequently, Cross-Defendants seek as damages an award of attorneys' fees and costs associated with those efforts, and have attached an affidavit establishing the amount of reasonable and necessary fees. *See* TEX. R. APP. P. 45; *Hunt*, 2010 WL 1508082, at *9 (identifying attorneys' fees as the typical damages award and noting that "proof by affidavit is a proper method of establishing the appropriate sanction for the filing of a frivolous appeal"). A fee award is appropriate as damages in this case because of the objectively groundless nature of this appeal.

**PRAYER**

For the foregoing reasons, Cross-Defendants Centroplex Automobile Recovery, Inc., John F. Thompson, Redshift Investigation, Inc., and Blake

Vandusen respectfully request that this Court affirm the trial court's holding that denied Santander's Motion to Compel Arbitration and Stay of Case. Cross-Defendants further ask this Court to impose damages upon Santander for this frivolous appeal based on the attached affidavit for reasonable attorneys' fees, and grant the Cross-Defendants any additional relief, at law or in equity, to which they are entitled.

Respectfully submitted,

**RICHARDSON + BURGESS LLP**
221 West 6th Street, Suite 900
Austin, Texas  78701-3445
Telephone: (512) 482-8808
Facsimile: (512) 499-8886
Email: kburgess@richardsonburgess.com
Email: ssharp@richardsonburgess.com


/s/ Stacy Rogers Sharp

By: _____
Karen C. Burgess
State Bar No. 00796276
Stacy Rogers Sharp
State Bar No. 24052109


**ATTORNEYS FOR APPELLEES**
**CENTROPLEX AUTOMOBILE**
**RECOVERY, INC. AND JOHN F.**
**THOMPSON**

**MACDONALD DEVIN, PC**
1201 Elm Street, Suite 3800
Dallas, Texas 75270-2130
Telephone: (214) 744-3300
Facsimile: (214) 747-0942
Email: jkenefick@macdonalddevin.com
Email: jsigety@macdonalddevin.com


/s/ John S. Kenefick

By: _____
John S. Kenefick
State Bar No. 24006294
John R. Sigety
State Bar No. 24083853


**ATTORNEYS FOR APPELLEE**
**BLAKE THORNTON VANDUSEN**

20

**LINDOW ▪ STEPHENS ▪ TREAT LLP**
One Riverwalk Place
700 North St. Mary's Street, Suite 1700
San Antonio, Texas 78205
Telephone: (210) 227-2200
Facsimile: (210) 227-4602
Email: clotz@lstlaw.com
Email: dlt@lstlaw.com

/s/ Christopher A. Lotz

By: _____

Christopher A. Lotz
State Bar No. 24031630
David L. Treat
State Bar No. 20205300

**ATTORNEYS FOR APPELLEE**
**REDSHIFT INVESTIGATION INC.**

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2010 and contains 3,670 words, as determined by the computer software's word-count function, excluding the sections of the document listed in TEX. R. APP. P. 9.4(i)(1).

/s/ Stacy Rogers Sharp

_____

Stacy Rogers Sharp

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon the following parties either electronically through an electronic filing manager or in the alternative served by fax prior to 5:00 p.m., in person, by mail, commercial delivery service, or email, on this 20th day of January, 2015, as follows:

Donald L. Turbyfill
Deborah C. S. Riherd
Vicki W. Hart
Devlin, Naylor & Turbyfill, PLLC
4801 Woodway Drive, Suite 420-West
Houston, Texas 77056-1884
Facsimile: (713) 586-7053

**ATTORNEYS FOR APPELLANT
SANTANDER CONSUMER USA, INC.**

Mario A. Mata
Mario A. Mata, PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701-4143
Facsimile: (214) 276-7305

**APPELLEE,** *pro se*

/s/ Stacy Rogers Sharp

_____

Stacy Rogers Sharp

No. 03-14-00782-CV

_____

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

_____

SANTANDER CONSUMER USA, INC.
Appellant,

v.

MARIO A. MATA, CENTROPLEX AUTOMOBILE RECOVERY, INC.,
BLAKE THORNTON VANDUSEN, JOHN F. THOMPSON D/B/A
CENTROPLEX AUTOMOBILE RECOVERY, INC., AND REDSHIFT
INVESTIGATION, INC.
Appellees.

_____

*Appealed from the*
*353ʳᵈ Judicial District Court*
*Travis County, Texas*
*Cause No. D-1-GN-13-000677*

_____

APPELLEES' APPENDIX

_____

<u>LIST OF DOCUMENTS</u>

TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) ..............................................TAB 1

Service Agreement ...............................................................................................TAB 2

Collateral Recovery Agreement...........................................................................TAB 3

Affidavit of Karen C. Burgess .............................................................................TAB 4

# TAB 1

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle B. Trial Matters
        Chapter 16. Limitations
          Subchapter A. Limitations of Personal Actions (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 16.003

§ 16.003. Two-Year Limitations Period

Effective: September 1, 2005
Currentness

(a) Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

(b) A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1995, 74th Leg., ch. 739, § 2, eff. June 15, 1995; Acts 1997, 75th Leg., ch. 26, § 2, eff. May 1, 1997; Acts 2005, 79th Leg., ch. 97, § 3, eff. Sept. 1, 2005.

**Editors' Notes**

**REVISOR'S NOTE**

**2002 Main Volume**

(1) The revised law omits the reference to firms and public and private corporations in the source law. The Code Construction Act (V.A.C.S. Article 5429b-2) includes business entities and governmental entities within the definition of "person."

(2) The revised law omits the source law material that provides for suits to be brought within two years of the effective date of V.A.C.S. Article 5526a (March 7, 1934) because the two-year period has expired.

Notes of Decisions (2559)

V. T. C. A., Civil Practice & Remedies Code § 16.003, TX CIV PRAC & REM § 16.003
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 2



Service Agreement
Skip/Charge-Off

In consideration of the mutual benefits to be derived by the parties hereto from the matters set forth herein, **DRIVE FINANCIAL SERVICES** ("Client"), and **Bay City Investigations** ("Agency"), hereby agrees as follows:

1. **Engagement**. Client hereby engages the services of Agency to perform investigation and recovery services for specific accounts receivable, owned by Drive Financial Services and placed with Agency. Agency agrees to undertake the collection of all accounts which Client decides to place with Agency and use due diligence and employ such means, methods, and procedures as in its judgment, discretion, and experience it believes will best effect the recovery of such accounts, provided such means, methods, and procedures are lawful and conducted by persons qualified to make such said judgment.

2. **Independent**. This agreement shall not be deemed a joint venture or partnership between Client and Agency. Agency shall only act in the capacity of an independent contractor of Client.

3. **Invoicing**. Agency will remit invoice within 24 hours of repossession, or the following business day if repossession occurs on holiday or weekend. Invoice should detail by individual account: service provided, agency fee, and all applicable taxes. Repossession agents will invoice Client directly, at no cost to the Agency.

4. **Compliance**. Agency agrees their services herein shall be provided in accordance with all applicable laws, ordinances, regulations, the Fair Debt Collections Practices Act, Graham-Leach-Bliley Act- 15 USC 6802-6827, similar state debt collection laws, and rules of federal, state, and local authorities and in a manner so as not to reflect unfavorably upon Client, and such services will be provided in a professional and workmanlike manner.

5. **Legal Accounts**. In the event Client or Agency requests legal action on an account, Client will advance all court costs, attorney's fees, mediation fees and other costs incurred during the legal process. Agency is required to submit request for legal action in writing and Client will submit such authorization in writing.

DEFENDANT'S EXHIBIT
D
tabbies

81

6. **Cost**. Except as expressly provided above with respect to Legal Accounts, Agency will bear all costs in connection with the collection of all accounts, including cost of transfer from Client's system to Agency's system and cost of return of all files upon termination of this contract.

7. **Withdrawal**. Client may withdraw any or all accounts from placement with Agency upon written notice at least thirty (30) days prior to date of such termination is to become effective, with or without cause. Immediately upon such termination of this Agreement, Agency will cease further investigation and recovery efforts and promptly return all accounts to Client. Accounts deemed "uncollectable" by Client and/or Agency will be cancelled by Agency and Client will be provided with written notification of cancelled accounts immediately cancellation, at no cost to the Client.

8. **Audits**. Client will have the right to audit all books and records of Agency relating to accounts placed pursuant hereto at all reasonable times.

9. **Assignment**. This agreement will run to the benefit of and shall be binding upon the parties and their affiliates, successors, and assignees. This Agreement may not be assigned by Agency without the written consent of Client. Any assignment made or attempted in violation of this provision shall be null and void.

10. **Unenforceable accounts**. In the event the Client learns the collection of an account is prohibited by reason of bankruptcy filing or otherwise is not enforceable, Client will immediately notify Agency. Once the Client has notified Agency of a bankruptcy filing, Agency will cease all investigation and recovery efforts, and Client will pull the loan back in-house to service the bankruptcy action. In the event the Agency receives notification of bankruptcy filing, Agency will obtain bankruptcy information: case number, chapter filed, date of filing, and attorney name and phone number; and immediately cancel account and notify Client of cancellation in writing.

11. **Indemnity Obligations**. Agency will indemnify and hold the Client and its employees, officers, directors, agents, and affiliates harmless from and against any and all costs, losses, damages (including court costs and reasonable attorney's fees), or other liabilities or expenses by reason of or in consequence of any claim arising out of any breach or violation by Agency of any provision of this Agreement and/or applicable law, or by reason of the acts or omissions of Agency in connection with the services performed by Agency pursuant to this Agreement. Client will indemnify and hold Agency and its employees, officers, directors, agents, and affiliates harmless from any and all costs, losses, damages (including court costs and reasonable attorney's fees), or other liabilities Agency may suffer by reason of the acts or omissions of Client or any other collection agency with respect to any account. These indemnity obligations shall survive the termination of this Agreement.

82

12. **Governing Law**. This agreement shall be governed and construed in accordance with laws of the State of Texas.

13. **Notices**. Any notices under this Agreement will be deemed to be given when delivered by hand or when sent by recognized overnight carrier service or mailed by United States Mail Registered or Certified mail first class postage, prepaid and in either case addressed to the recipient party as set forth below, or to such other personal address as such other party may specify by similar notice to the other party hereto.

> *BILL GOURLEY*
> *BAY CITY INVESTIGATIONS*
> *5017 FORNI DR. #B*
> *CONCORD, CA 94520*
> Phone: 925-687-2916
> Fax: 925-687-2924

Shawn Kibel or Jennifer Wilkinson-Dimas
**Drive Financial Services**
8585 North Stemmons Freeway
Suite 900 North
Dallas, Texas 75247

14. **Use of Client's Name**. Agency agrees it will not use, in any advertising or promotional material or media, Client's name or logo or the name or logo of any affiliate of Client, or otherwise identify Client as a client of Agency, without Client's prior written consent.

15. **Non-Exclusive Agreement**. It is agreed that nothing herein contained shall be construed as obligating Client to place accounts with Agency for investigation or recovery or as an exclusive arrangement between Agency and Client.

16. **Insurance**. Agency shall maintain commercial general public liability and professional liability insurance in minimum amounts of $1,000,000 for any one occurrence and in the aggregate. Upon client's request, Agency shall provide appropriate certificates showing such insurance coverage is in effect. Agency shall name Drive Financial Services, LLP, and Drive Servicing, LLC, as *Certificate Holder* on General Liability Policy. A $1,000,000 *Errors and Omissions Policy* will be required, inclusive of Third Party Disclosure, Misrepresentation, and Wrongful Repossession. Agency shall name Drive Financial Services, LLP, and Drive Servicing, LLC, as *Certificate Holder on* Errors and Omissions Policy. Agency shall be required to obtain $10,000 surety bond per Texas Finance Code for Debt Collection, Subchapter B., Section 392.101.

17. **Termination**. Following the first ninety (90) days of the term hereof, either party may terminate this agreement without cause by giving the other party thirty (30) days prior written notice. Any termination notice must be in writing. Each party shall promptly and professionally return all files. Agency and Client's continuing obligation under this Agreement relating to audits, reporting, and indemnification for breach of duties, representations, obligations, guarantees, warranties, or covenants, of this Agreement. There shall be no cancellation or closing fee.

18. **Severability**. If any provision of this Agreement shall to any extent be determined by a court of law to be invalid, the remainder of the Agreement shall not be affected thereby, and shall continue to be in full force and effect.

19. **Construction**. The headings of sections and subdivisions of this Agreement are for reference only. Such sections and subdivisions shall not be used in any way to govern, limit, modify or construe this Agreement or be given any legal effect whatsoever.

20. **Updates**. Agency shall provide Client with monthly updates on account status. Client shall receive updates no later than the 10th of each month, by means of United States postal service or electronic mail. Updates shall provide Client with brief summary of collections activities and action plan, if any.

21. **Fees**. Fee schedule has been negotiated and agreed upon by both Agency and Client (See Addendum 1).

22. **Repossession**. All accounts shall be assigned to repossession agents as "Repossession on Sight." Agency shall not accept any remittance under any circumstances. If debtor is interested in resolving account, the repossession agent is required to complete repossession and debtor will be provided with Outsourcing Coordinator's office number. Agency must notify Client of repossession by means of faxed Condition Report within 24 hours, or next business day if repossession occurs on holiday or weekend.

23. **Approved Repossession Agent**. Agency shall expressly use Client-approved repossession agents. Client shall provide agent list upon signing Agreement. Client will provide Agency with any and all revisions to the repossession agent list. Agency shall notify Client of any additional charges to be assessed on repossession; Client must authorize any additional charges in writing, prior to Repossession Agent taking action.

EXECUTED effective as of the 1st day of DECEMBER 2002

By: _____ R.V.P.
David Sivils, Senior Vice President Loss Prevention

By: _____
Shawn Kibel, Assistant Vice President, Central Recovery Loss Prevention

Drive Financial Services
8585 North Stemmons
Dallas, Texas 75247

_____

By: _____
President
BAY CITY INVESTIGATIONS
5017 FERNI DL #B
CONCORD, CA 94520

By: _____
_____
_____
_____
_____

85

TAB 3

# COLLATERAL RECOVERY AGREEMENT

This COLLATERAL RECOVERY AGREEMENT (this "Agreement") is hereby entered into effective as of the date set forth below, by and between **REDSHIFT INVESTIGATION,** /a/ California Corporation ("Redshift Investigation"), and _Centroplex Automobile a_ _Corporation_ ("Recovery Agency") (collectively referred to as the "Parties").

## RECITALS:

A.     Redshift Investigation contracts with various financial institutions ("Client" or "Clients") to recover secured collateral ("Property") on behalf of the Client. Due to the location of the Property to be recovered, Redshift Investigation subcontracts physical recovery of the Property to third party recovery agencies;

B.     Recovery Agency is in the business of recovering personal property and wishes to establish a relationship with Redshift Investigation in order to receive recovery assignments ("Assignments") from Redshift Investigation;

C.     For good and valuable consideration, receipt of which is hereby acknowledged, Redshift Investigation and Recovery Agency hereby enter into the following non-exclusive Agreement:

## AGREEMENT:

1.     **Term and Termination.**

1.1.     This Agreement shall continue in full force and effect until terminated by either of the Parties as set forth below.

1.2.     This Agreement may be terminated without cause by Recovery Agency upon thirty (30) days prior written notice to Redshift Investigation.

1.3.     Redshift Investigation may cancel this Agreement and/or any Assignment at any given time for any reason. Redshift Investigation will provide notification of a cancelled Assignment to Recovery Agency via telephone or other method as designated by Redshift Investigation. An Assignment shall be deemed cancelled as of the date of such notice. Recovery Agency will cease performance of services on the Assignment(s) as soon as possible, but no greater than twenty-four (24) hours after notification has been given; provided, however, if cancellation is due to breach by Recovery Agency of this Agreement as determined in Redshift Investigation's sole discretion, then such cessation of services must occur within one (1) hour of such notice. Redshift Investigation will determine the appropriate fees and costs to be paid to Recovery Agency on a case-by-case basis, depending on the services performed at the time of cancellation.

1.4.     Upon termination of this Agreement, Recovery Agency shall return all Property, account data and all Client information in its possession, or in the possession

**Redshift 075**

Exhibit D

of its subcontractors, to Redshift Investigation within seven (7) days after the effective date of the termination of this Agreement. Recovery Agency shall return such Property to Redshift Investigation in the same condition as when such Property was recovered by or delivered to Recovery Agency.

2.   **Policies And Procedures.**

Redshift Investigation's policies and procedures are attached hereto as **Exhibit A** and are hereby incorporated into this Agreement. From time to time, Redshift Investigation may amend its policies and procedures, which, when initialed by Redshift Investigation and Recovery Agency, will become a part of this Agreement.

3.   **Damaged Property.**

3.1.   Recovery Agency will obtain the prior approval of Redshift Investigation before securing any Property with major, visible, or known damage that may result in a significantly reduced sale price at Auction ("Damaged Property"). Visible damage will include, but not be limited to, the following:

(a)   Major collision or comprehensive damage;

(b)   Missing mechanical or body parts;

(c)   Altered Property;

(d)   Property that requires repairs (i.e. no tires, motor, windshields, etc.); or

(e)   Property that appears to be worth less than $2,000.

3.2.   If Recovery Agency discovers Damaged Property during an Assignment and Redshift Investigation advises Recovery Agency not to arrange for the recovery of such Damaged Property, Redshift Investigation will decide on a case-by-case basis whether payment of fees and costs for the Assignment is appropriate ("Attempted Recovery"), based on services performed.

3.3.   Recovery Agency is required to submit pictures to Redshift Investigation that clearly demonstrate damage ("Substantiating Pictures") in order for Attempted Recovery fee to be approved.

3.4.   Redshift Investigation, in its sole and absolute discretion, will determine on a case-by-case basis whether payment is appropriate if Recovery Agency arranges for the recovery of Damaged Property without the prior approval of Redshift Investigation or without submitting Substantiating Pictures for Damaged Property.

**Redshift 076**

141

## 4. Liability for Loss or Damage.

4.1. Recovery Agency has full responsibility for the Property while it is in Recovery Agency's possession and will exercise commercially reasonable caution to prevent the Property from being damaged, lost or stolen.

4.2. If the Property is damaged, lost or stolen while under Recovery Agency's control, Recovery Agency will notify Redshift Investigation within twenty-four (24) hours and will pay for all costs of repair or replacement.

## 5. Notification of Repossession.

5.1. **Time for Reporting.**

(a) Recovery Agency will report all repossessions that occur during normal business hours to Redshift Investigation within six (6) hours of repossession. Normal business hours are Monday through Friday, 9 a.m. to 5 p.m., Pacific Standard Time ("PST").

(b) If the repossession occurs outside of normal business hours, Recovery Agency will submit a Notification of Repossession via facsimile, via email or online to Redshift Investigation before 10:00 a.m. PST on the next calendar day.

5.2. **Procedure for Reporting.** Reporting shall be by a Notification of Repossession, in the form attached hereto as **Exhibit B**, and shall be sent to Redshift Investigation online (see Policies and Procedures attached hereto as **Exhibit A**) or by facsimile or email. Redshift Investigation will fax or email Recovery Agency a confirmation of Notification of Repossession within six (6) business hours of Redshift Investigation's receipt of Notification of Repossession.

5.3. **Liability for Late Reporting.** Recovery Agency acknowledges that some of Redshift Investigation's Clients have default insurance which will pay the unpaid balance of a contract upon repossession, but only if the fact of repossession is reported to the insurance company within fifteen (15) days of repossession. If Recovery Agency fails to timely report a repossession, and therefore causes Redshift Investigation's Client(s) to lose any default insurance coverage, Recovery Agency shall be liable for the amount which such default insurance would have paid if the repossession had been timely reported.

## 6. Relationship Between the Parties.

6.1. Recovery Agency is an independent contractor, and nothing contained herein shall be construed as creating any relationship between Redshift Investigation and Recovery Agency other than that of independent contractor. Without limiting the generality of the foregoing, Recovery Agency shall have no authority to enter into any contract on behalf of Redshift Investigation or to otherwise make any representations, agreements or covenants on its behalf. Recovery Agency has the exclusive right to establish the work hours of its personnel providing the services and to control and direct

**Redshift 077**

142

the methods, means, manner and details of performing its obligations under this Agreement. Recovery Agency also agrees to inform debtors, consumers, its employees, agents, representatives and subcontractors, and all other persons and entities involved in the performance of the services under this Agreement, that it is an independent business with no affiliations to Redshift Investigation.

6.2. If any court or administrative tribunal or agency with appropriate jurisdiction determinations that any employment relationship has been or will be established by the performance of this Agreement, notwithstanding anything to the contrary set forth in this Agreement, Recovery Agency will reimburse and indemnify Redshift Investigation for costs and expenses of any nature arising out of or relating to such a determination and/or Redshift Investigation's defense of such a determination, including, but not limited to, tax withholding and insurance claims in the nature of unemployment compensation and/or workers' compensation imposed by any level of government and reasonable attorneys' fees and costs of suit.

7. <u>Confidential Information; Recovery Agency Obligations.</u>

Recovery Agency will maintain the confidentiality of all of the information disclosed by Redshift Investigation ("Confidential Information") and agrees to use Confidential Information solely for the tasks and purposes for which it is disclosed. Recovery Agency must use a closed computer operating system that does not allow third parties to access Confidential Information on any account referred to Recovery Agency by Redshift Investigation. Redshift Investigation may examine and audit Recovery Agency's records and processes pertaining to this Section 8 at any reasonable time and upon advance notice.

8. <u>Insurance.</u>

8.1. Recovery Agency must maintain at all times the following minimum insurance requirements; provided, however that such minimum insurance requirements shall in no way limit the liability assumed elsewhere in this Agreement:

(a) Commercial General Liability

(1) Commercial General Liability Form. Including Premises/Operations, Independent Contractors, Products/Completed Operations, Personal Injury, Broad Form Property Damage (including Completed Operations).

(2) Contractual Liability: Blanket basis insuring the liability assumed under this Agreement.

(3) Limits of Liability: $1,000,000 Each Occurrence for Bodily Injury and/or Property Damage and $2,000,000 General Policy Aggregate.

(b) Business Automobile Liability

**Redshift 078**

143

(1)     Business Automobile Liability Form covering physical damage of Redshift Investigation's Property, including all owned, non-owned and hired vehicles, aircraft and other vehicles subject to repossession pursuant to this Agreement

(2)     Limits of Liability: $2,000,000 Combined Single Limit for Bodily Injury and Property Damage.

(c)     Garage Keepers Direct Primary Coverage $300,000 limit.

(d)     Drive-Away and On-Hook Physical Damage $100,000 limit.

(e)     In the event of repossession of Property that must be transported over water, Marine coverage of $1,000,000. Such insurance shall provide replacement cost coverage for physical damage to all Property traveling over water. Deductible may not exceed $1,000 per occurrence.

8.2.     All insurance coverage required as herein set forth, including deductible requirements, shall be at the sole cost and expense of Recovery Agency.

8.3.     Except where prohibited by law, all insurance policies shall contain provisions that the insurance companies waive the rights of recovery or subrogation against Redshift Investigation, its agents, servants, invitees, employees, contractors, subcontractors and insurers. Such insurance must be primary and noncontributory to any insurance maintained by Redshift Investigation.

8.4.     A Certificate of Insurance evidencing all of the above (the "Certificate") must be presented to Redshift Investigation. The Certificate must name "Redshift Investigation, Inc., a California corporation" as an additional insured and must also show that Redshift Investigation must receive thirty (30) days notice prior to cancellation or material change. Recovery Agency must submit the Certificate to Redshift Investigation on the date this Agreement is signed and then on an annual basis based upon the renewal date.

8.5.     All of the insurance policies required to be obtained pursuant to this Agreement shall be with companies licensed to do business in the state and/or country where the Assignments will be performed and rated no less than Standard and Poor's AAAa to Claims Paying Ability or BBq to Qualified Solvency Rating as to financial rating and no less than A- as to Policy Holder's Rating in the current edition of Best's Insurance Guide (or with an association of companies each of the members of which are so rated).

9.     <u>Records.</u>

9.1.     Recovery Agency shall maintain, for three (3) years, work or repair orders and billings in connection with the services performed by Recovery Agency, or its agents or subcontractors, under the terms of this Agreement. Recovery Agency shall make all such records available for audit and inspection by Redshift Investigation during

**Redshift 079**

reasonable business hours, and any discrepancies found as a result of such inspection shall be promptly adjusted.

9.2. Recovery Agency shall be responsible for maintaining an accurate inventory of Property in its possession, and in the possession of its agents or subcontractors, and shall report to Redshift Investigation, upon request from Redshift Investigation and at reasonable intervals, the status of said inventory by model and model year of such Property.

10. **Audit.**

Redshift Investigation, or a third party acting as agent for Redshift Investigation, may, at any reasonable time and with advance notice, examine or audit Recovery Agency's records pertaining to work efforts, activities or transactions relating to services provided by Recovery Agency under this Agreement as well as the security, protection and confidentiality of Redshift Investigation's Confidential Information, as that term is defined in this Agreement. In the event Redshift Investigation identifies a control weakness or risk that could adversely impact Recovery Agency's ability to perform under the terms and conditions of this Agreement, Redshift Investigation will promptly inform Recovery Agency in writing of such weakness or risk. Recovery Agency will have ten (10) business days to respond to this written notice, and thirty (30) days to remedy the identified problem.

11. **Representations And Warranties of Redshift Investigation.**

11.1. Redshift Investigation represents and warrants to Recovery Agency that:

(a) To the best of its knowledge, Client has the legal right to repossess the Property described in the Assignments.

(b) The information provided regarding any account has been prepared in good faith based upon Redshift Investigation's books and records.

(c) Redshift Investigation is authorized to enter into this Agreement.

12. **Representations And Warranties of Recovery Agency.**

12.1. Recovery Agency represents and warrants to Redshift Investigation that:

(a) It is operating as the business entity described under the signature line of Recovery Agency and that such business entity possesses all licenses and permits in the State, County or other jurisdiction in which Recovery Agency operates in order to allow Recovery Agency to repossess the Property described in the Assignments from Redshift Investigation to Recovery Agency.

(b) Recovery Agency and its subcontractors are duly licensed, bonded, insured and qualified to do business as may be required in the jurisdiction(s) where the services hereunder will be performed and other applicable law.

**Redshift 080**

(c) Recovery Agency will comply with all instructions given by Redshift Investigation and will comply with all laws and regulations applicable to Recovery Agency in recovering the Property.

(d) To the best of Recovery Agency's knowledge, its computing environment(s), and the computing environment(s) of its subcontractors, used to provide services under this Agreement, are free from all generally-known viruses, worms, Trojans and other "malware," and that Recovery Agency and its subcontractors have deployed antivirus software.

13. Indemnification.

13.1. Recovery Agency hereby agrees to indemnify and hold Redshift Investigation, together with its agents, employees and clients, harmless from any and all damages, liability, causes of action, costs, expenses, contingent or liquidated damages (including attorney's fees), resulting directly or indirectly from the breach of any provision of this Agreement, or the acts, omissions, negligence, wrongful acts or repossession, or wrongful operation of Recovery Agency's business not in accordance with applicable laws and regulations, or errors by Recovery Agency, or any of its employees, agents, representatives, officers or subcontractors. This indemnification includes but is not limited to any liability Recovery Agency may incur due to the use of unlawful means of obtaining property.

13.2. Recovery Agency expressly indemnifies Redshift Investigation against any third party claims arising out of its services under this Agreement, including wrongful repossession, wrongful operation of business not in accordance with laws and regulations and all wrongful acts by repossession agents or investigators hired by or contracted to Recovery Agency.

13.3. Recovery Agency agrees to assume all liability, and indemnify Redshift Investigation, for any employee or independent contractor's failure to abide by state and federal laws and failure to maintain insurance as required pursuant to Section 8 of this Agreement.

14. **Prohibition On Assignment.**

14.1. Without Redshift Investigation's prior written consent, Recovery Agency will not assign or transfer to any other person or company this Agreement or any Assignments made by Redshift Investigation hereunder. All persons used by Recovery Agency to carry out and perform the repossession, transport or storage with respect to any Assignment under this Agreement shall be insured under Recovery Agency's insurance policy described in Section 13. Without limiting the generality of the foregoing, Recovery Agency shall not use independent contractors who are not covered under Recovery Agency's insurance policy.

14.2. Recovery Agency agrees and warrants that its subcontractors will not subcontract any of Redshift Investigation's Assignments to recovery agencies or subcontractors/agents without the prior written consent of Redshift Investigation. Any

**Redshift 081**

146

such subcontracting by Recovery Agency's agents/subcontractors will be deemed a material breach of this Agreement.

15. **Prohibition on Pretexting**

Recovery Agency agrees that neither it nor its subcontractors or agents shall engage in the practice of pretexting. Broadly defined, without limitation, pretexting is an investigatory action that disguises the identity of a caller, the true nature of a communication, or the purpose of the contact in order to obtain personal information about another. It would also include the use of false, fictitious, or fraudulent statements to obtain (or purchase) non-public information of an account debtor.

16. **Interpretation and Enforcement.**

16.1. This Agreement contains all of the agreements, understandings, representation, conditions, warranties and covenants made between the Parties, and all modifications and amendments must be in a writing signed by the Parties.

16.2. This Agreement will be binding upon the Parties, their successors and assigns.

16.3. This Agreement will be governed by the laws of the State of California.

16.4. This Agreement may be executed in one or more counterparts which, when taken together, shall constitute the entire Agreement.

16.5. In the event legal action is necessary to enforce or interpret the provisions of this Agreement, the Parties agree to be subject to jurisdiction in Sacramento, California; any claim will be submitted and heard in Sacramento. The prevailing party will be entitled to recover reasonable attorneys' fees.

**Redshift 082**

147

## Polices and Procedures

I. **Acceptance of Assignment**
   a. Recognize Redshift Investigation as its client; agent shall not contact legal owner in connection to assignments received by RSI during or upon completion of said assignment.
   b. Acknowledge receipt of assignment via first update either faxed or emailed within 24 hours of acceptance.
   c. Assignments will include: date of assignment, client name, registered owner's name, complete vehicle information, and payment history.
   d. First update should give complete description of property checked, including other vehicles on the property, neighborhood description, whether able to check garage if present.
   e. Subsequent updates should include ability to make contact with residents or property owners. If contact is not wanted it will be defined in the assignment.
   f. Most clients require skip assignments to be accepted on a contingent basis only. In some cases we are able to get close fees of $75.00; acceptance of assignment will clearly advise either contingent or close fee $75.00
   g. All fees are agreed upon by Redshift Investigation and Contractor as written in **Fee Schedule. Any additional funds or fees must be pre-approved. Deviation from this may result in non-payment of unapproved activity.**

II. **Reporting Repossession**
   a. Report repossession via facsimile or email with (24) hours of effecting repossession. Fax notice to 707-452-8650 or email to info@redshiftinvestigation.com; we require the following information:
      i. Date and time of repossession
      ii. Address collateral was secured from
      iii. Police Department notification if required in your state
      iv. Mileage of vehicle if available
      v. License plate and tag expiration
      vi. Storage address of collateral
      vii. Personal property (yes or no)
   b. Prepare and forward to RSI, within twenty-four (24) hours of repossessing a condition report of the collateral recovered. The condition report should be an objective evaluation of the physical appearance of the recovered property and will not be deemed an evaluation of the mechanical condition. All collision and comprehensive damage must be documented at the time of the report.
   c. Prepare and forward to RSI a list of personal property in accordance with applicable state laws.
   d. Store all personal property found in or with recovered property in accordance with applicable state laws.
   e. Dispose of all personal property in accordance with applicable state laws.

45868417.3 09803765                          A-1

III. **Impounds**
   a. Vehicles located at Tow Company with bailout fees must be approved before pickup.
   b. It is always appreciated if bailout fees can be fronted for prompt recovery, however if agents policies do not comply then RSI will next day air bailout amount.
   c. All authorized fees are required to have a bailout receipt that matches the amount approved and billed.

IV. **Keys**
   a. Regular keys are included in the standard repossession fee, unless agents key charge is pre-approved. Security keys are only made with client's approval.
   b. Keys charges of any kind will not be paid if not pre-approved.

V. **Mileage**
   a. Mileage can only be paid if pre-approved with name and date of representative in writing; email is an acceptable format.

VI. **Finders Fees**
   a. Finders fees are sometimes an effective way to recover a vehicle however they can only be approved by the client.
   b. Finders fees will not be paid if not pre-approved

VII. **Releasing Vehicles**
   a. Agent can only release/redeem a vehicle to the debtor with written permission from RSI or its client.

VIII. **Transport and Storage**
   a. RSI will send transport instructions. (See line XI. Fee Schedule for rates).
   b. If vehicle is on agent's lot for more than 30 days without instructions to transport or hold then agent must notify RSI in an email of stored vehicle. Email address: info@redshiftinvestigation.com.
   c. Storage agent approves 10 free days of storage to all clients.
   d. Storage fee to client is $8.00 per day starting on the (11) eleventh day.
      i. Exception
         1. VW Credit/Audi Financial is $7.00 per day starting on the (11) eleventh day.

IX. **Closing Assignments**
   a. Only when approved by RSI – most assignments are on a contingent basis however if close fee has been approved the amount is $75.00 unless pre-approved for a higher amount.
   b. If you have reached a dead end and want to close the assignment it still must be approved by RSI or client.
   c. If not authorized then the assignment can only be suspended in your system and RSI will advise when the client has authorized the close for billing.
   d. Close fees of any kind will not be paid if not approved.

X. **Accounting Procedures**
   a. Invoice RSI immediately following the repossession within 24 hours. Invoices should be sent either fax or scanned and emailed. **DO NOT MAIL INVOICES.**
      i. Fax number: 707-452-8650
      ii. Email address: info@redshiftinvestigation.com

45868417.3 09803765                         A-2

**Redshift 084**

b. Invoices should include: RSI account number, full debtor name, vehicle information, and last six of VIN#.

c. Submit Invoices in a timely manner. Any invoice sent over 90 days from the time of repossession cannot and will not be paid.

XI. **Fee Schedule**

a. Standard Repossession Fee................................$350.00

    i. Exceptions

        1. Carmax....................................$325.00

        2. VW Credit/Audi Financial............$325.00

b. Close Fee.......................................................Contingent

    i. Exceptions

        1. VW Credit/Audi Financial..............$75.00

        2. Pre-approved Close Fee................more than $75.00

c. Transport/Delivery Fee....................................pre-approved only

    i. Exceptions

        1. Carmax (within 50 miles)..............up to $75.00

        2. Carmax (over 50 miles)................pre-approved only

d. Mileage Fee...................................................pre-approved only

e. Key Fee........................................................pre-approved only

f. Finders Fee....................................................pre-approved only

Redshift 085

## Exhibit B
## Notification Report

Recovery Company: _____ Client: _____ Debtor: _____

Recovered by:_____ Recovery Address:_____

Recovery Date:_____ Account #:_____ W/O#_____

Vin:_____ Mileage:_____

Year:_____ Make:_____ Model:_____

Color:_____ Runs:_____ Keys:_____

Tags:_____ License:_____ Property in Vehicle:_____

Tow Dolly Used:_____

Agency:_____ Phone:_____

Notification Date & Time:_____ Badge#:_____

Storage Location:_____

Notes:_____

**Redshift 086**

151

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the date written below.

"REDSHIFT INVESTIGATION"

Date: 06-01-2010

(Effective Date of Agreement)

By: _____
(signature)

_____
(print name and title)

"RECOVERY AGENCY"

Date: 06/01/10

_____
(type of entity, partnership, corporation, sole proprietorship)

By: _____
(signature)

_____
(print name and title)

9

# TAB 4

# AFFIDAVIT OF KAREN C. BURGESS

Before me, the undersigned notary, on this day personally appeared, Karen C. Burgess, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Karen C. Burgess. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am an attorney licensed to practice in the State of Texas. I have practiced law for eighteen years. I am Board Certified in Civil Trial Law and I have an AV Preeminent rating by Martindale-Hubbell.

I represent Appellees Centroplex Automobile Recovery, Inc. and John F. Thompson ("Appellees") in this case and I have personal knowledge of the case and the work performed.

It was necessary for Appellees to retain an attorney to represent them in this matter. I have agreed to be compensated for my work based on an hourly rate plus costs. The other attorney and paralegal assigned to this case (1) are qualified by education, experience, and training to perform the services required, (2) have knowledge of the legal system, principles, and procedures, (3) performed tasks that are traditionally done by an attorney, (4) performed services that were reasonable and necessary, and (5) were under my supervision.

Appellant Santander Consumer USA, Inc.'s ("Appellant") brief required approximately 44.4 hours of attorney time and 10.0 hours of paralegal time, for a total of $11,000.00, to defend.

The attorney services and fees charged in this case were reasonable and necessary under Texas State Bar Rule of Professional Conduct, Rule 1.04(b), and were incurred in defending Appellant's brief. The fees I have charged in this case are significantly lower than those customarily charged in this area for the same or similar services for an attorney with my experience, reputation, and ability, considering the type of controversy, the time limitations imposed, and the results obtained."



Karen C. Burgess

Sworn to and subscribed before me by Karen C. Burgess on this the 20th day of January, 2015.

ERIC JOHN BOUCHERON
Notary Public, State of Texas
My Commission Expires
September 22, 2015

Notary Public in and for the State of Texas